Bonnell v. Allerton.

## BONNELL v. ALLERTON

1. **Judicial Sale: CONSTRUCTIVE NOTICE.** Where the judgment debtor sells his land prior to the sale to a party who has been in possession from a period long prior to the rendition of the judgment, and who himself is the possessor of the equitable title, the possession of the latter at the time of the sale will be presumed to be under the legal title, and the purchaser at judicial sale will be protected against the equitable title. BECK and ADAMS, JJ., *dissenting.*

*Appeal from Jasper Circuit Court.*

SATURDAY, APRIL 26.

ACTION in equity. The defendant claims to be the owner of certain real estate described in the pleadings, such title being derived through A. J. Berry, against whom the First National Bank of Newton had a judgment under which the land was sold and conveyed to the defendant by the sheriff. The plaintiffs claim the land did not belong to A. J. Berry but to James W. Berry, against whom they have a judgment, and they bring this action to set aside the defendant's title.

The Circuit Court found for the plaintiffs, entered a decree accordingly, and defendant appeals.

*Smith & Wilson,* for appellant.

*G. W. & A. J. McCrary* and *D. Ryan,* for appellees.

SEEVERS, J.—The conceded facts are—*First.* The judgment

Bonnell v. Allerton.

under which the defendant claims was rendered on the 25th day of March, 1868, against A. J. Berry, by the District Court of the county in which the premises are situate, and the same were sold thereunder by the sheriff to the First National Bank of Newton on the 28th day of May, 1870. A certificate of purchase was given the bank, which was assigned to the defendant, and the sheriff conveyed to him the premises on the expiration of the period allowed for redemption. *Second.* At the time said judgment was rendered the legal title was in A. J. Berry, and it. so appeared of record. *Third.* On the 16th day of December, 1868, A. J. Berry conveyed the premises to James W. Berry, and such conveyance was filed for record October 5, 1869. *Fourth.* The premises were originally owned by one Wiggins, who, in 1863, conveyed the same to A. J. and James W. Berry.

*1. JUDICIAL sale: constructive notice.*

The plaintiffs claim that A. J. Berry sold his undivided half of the real estate in controversy to James W. Berry, in 1863, for a good and valuable consideration, and that the latter, under and by virtue thereof, took possession, and was in possession at the time the judgment was rendered and the sale made thereunder by virtue of which the defendant claims title. They further claim that the conveyance made in December, 1868, was for the purpose of vesting the legal title in James W. Berry, in accordance with such purchase and sale. These several matters are controverted by the defendant, but for the purpose of this case they will be conceded to be true.

The plaintiff also claims that a deed made in 1866 by James W. to A. J. Berry was made without consideration. This, also, may be conceded, but it is undoubtedly true that thereby the legal title was placed in A. J. Berry, and a purchaser from him without notice would be protected.

The plaintiff also claims that the bank, at the time the premises were sold, had actual notice that James W. Berry was the equitable owner thereof. In this view we do not concur. The

only testimony on which this claim is based is that of D. L. Clark, the president of the bank. Clark learned in some way, and he thinks he got his information from John W. Berry, that the deed made in 1866 by James W. to A. J. Berry was without consideration, and was made to avoid a prosecution for perjury which was threatened. Prior to the sale Clark made inquiries in relation to this matter "of the Berrys, and also of James W. Berry," and thinks "James W. Berry said he had no title to said lands." So far from this showing actual notice of such equitable title, we think it shows just the reverse; for certainly Clark would be justified in relying on what James W. Berry informed him, instead of mere rumor or what he learned from others. But Clark, and through him the bank, did have notice at the time of the sale that James W. Berry was in possession, and conceding the bank had no right to rely on what James W. Berry told Clark as to the state of the title, and that the defendant is bound by the knowledge of the bank, we have for determination this case:

The legal title of record was in A. J. Berry at the time the judgment in favor of the bank was rendered, and at the time of the sale thereunder such title was in James W. Berry, and the purchaser had notice the latter was in possession. To what should he attribute such possession? To the legal or to an equitable title, which had its inception long prior to the title being vested in James W. Berry? Clearly to the former. The purchaser finds a party in possession owning the legal title of record. Why should he inquire whether such possession is held under some other title? The rule is, where a party is found in possession of real property without any title of record, that good faith and common prudence require a purchaser to inquire under what title he holds, and if he fails to so do and purchases, he takes the title subject to the equities of the parties in possession. But if the legal title and possession unite in the same person there is no necessity for inquiry, as the purchaser may well presume the possession to

be based on the legal title.    *Rogers v. Hussey*, 36 Iowa, 664;
*Brown v. Wade*, 42 Id., 647.

The adoption of any other rule would make it incumbent
on a purchaser, before he could purchase safely, to inquire in
all instances whether a party in possession held the same
under his legal title or by virtue of an equitable title.

The bank, therefore, was a purchaser without notice of the
existence of any equitable title in James W. Berry.    The title
of the defendant relates back to the date of the judgment, and
is, therefore, good and perfect as against the plaintiffs.

The judgment of the Circuit Court is reversed, with direc-
tions to dismiss the petition and enter a decree in accordance
with this opinion; or the defendant may have such a decree
in this court if he desires.

REVERSED.

## ON REHEARING.

SEEVERS, J.—In a petition for a rehearing the counsel for
the plaintiff insists that the bank, under whom the defendant
claims, had both actual and constructive notice of the title or
interest of James W. Berry in the land in controversy.    We
are entirely content with the disposition made in the forego-
ing opinion of the question of constructive notice.

A more satisfactory disposition can be made of the ques-
tion of actual notice than has been done in the foregoing
opinion by quoting and referring to the testimony bearing on
that point.    Such testimony consists of two depositions of
D. L. Clark, the president of the bank; one being taken by
plaintiffs, and the other by the defendant.    Mr. Clark is an
attorney, and was engaged in looking up the titles to the
Berry lands so as to enable him intelligently to bid on the
same when offered for sale under the execution in favor of
the bank, and he testifies:

"I know that James W. Berry made a deed to A. J. Berry
for the undivided half of the lands.    *    *    I cannot say when
I first learned the consideration, but when I was looking up

the Berry matters I found the deed was made to avoid a prosecution. I cannot say how I learned it, but think I learned it from the Berrys that A. J. Berry did not pay him anything for the land. I learned these facts while looking up the Berry matters." This, the witness says, was prior to May 28, 1870, and he thinks it was sometime in 1868 or 1869.

This question was asked Clark: "What inquiry did you make prior to date of sale under execution as to the nature. and extent of the claim and interest of James W. Berry to said land?" He answered as follows: "Prior to that sale I made inquiries of the Berrys, and also James W. Berry. I think James W. Berry said he had no title to the land." Clark. also testifies that he thinks James W. Berry knew the land was to be sold as the property of A. J. Berry, on the judgments in favor of the bank against him, and James W. Berry made no objection to the sale, to the knowledge of Clark.

The foregoing presents the substance of the testimony of Clark, and there is no other on the point now under consideration. It is quite apparent that the bank, through Clark, before the sale of the land, became possessed of knowledge tending to show that the conveyance made by James W. Berry to A. J. Berry was made without consideration, and was, therefore, void as against the creditors of the former.

Whether such knowledge constituted sufficient notice of the equitable title of James W. Berry, within the rule laid down in *Wilson v. Miller et al.*, 16 Iowa, 111, we shall not stop to inquire. It was sufficient, we think, to put the bank on inquiry as to the title and interest of James W. Berry, who at the time was in possession of the premises.

Clark must have so understood; at least he did inquire of James W. Berry as to his title, and was informed he had none. Relying on this information, as it well might, the bank purchased at the sale on execution.

The legal title of record was in A. J. Berry up to the 16th

day of December, 1868, when he conveyed to James W. Berry, but this conveyance was not placed on record until October 5, 1869.

If the inquiry was made before the former date it may be said that James W. Berry spoke the literal truth, but he did not speak the whole truth as he was bound to do. He, without doubt, we think, knew the object of Clark's inquiry; but, whether he did or not, he should have disclosed whatever interest he had, and, failing to do so, he is bound and estopped from now asserting a title or interest which he failed to disclose.

The plaintiffs, in this respect, stand in the shoes of James W. Berry, and if this action were by the latter, to set aside the title of the bank, or the defendant, who claims through it, on the ground that the bank had notice of his interest or title, we think, upon every principle of common honesty and fair dealing, he should be estopped to now say what he should at the time have said.

The bank was justified in believing James W. Berry had no interest in the land, and as the legal title was in A. J. Berry when its judgment was rendered, it was a purchaser for value, without notice of the title or interest of James W. Berry.

The former opinion is adhered to.

BECK, CH. J., *dissenting.*—I am unable to concur in the opinions of the majority of the court filed in this case. It is proper for me to say here that I never concurred in the first opinion. In the absence of fault on the part of any one it was filed without my assent and concurrence. It is not important that the circumstances of its filing, under a misapprehension of fact, should be stated. I have given the case careful consideration and reach a conclusion contrary to the opinion of my brothers. I am authorized to say that Mr. Justice ADAMS concurs in the views I express. I think I cannot make these views sufficiently clear without a pretty full statement of the facts, which I shall proceed to give.

I. 1. The First National Bank of Newton recovered a judgment against A. J. Berry and others, on the 26th day of March, 1868, whereon an execution was issued and levied upon the lands in controversy, which were sold to plaintiff in execution on the 28th day of May, 1870.

2. The defendant in this case, Allerton, recovered a judgment against A. J. Berry in the name of another, which was subsequently assigned to him. This judgment was junior to the judgment of the First National Bank of Newton. Under it Allerton redeemed from the sale and from other judgments, and the certificate of sale, as provided by law, was assigned to him.

3. On the 19th day of July, 1870, the plaintiffs in this case recovered a judgment against A. J. Berry, James W. Berry and another, which they seek, in this action, to enforce against the lands in controversy, on the ground that the property was in fact owned by James W. Berry, and that A. J. Berry, who defendant claims was the owner thereof, had no interest in it. The decision of the case rests upon the question of the ownership of the lands and defendant's notice thereof. The facts in regard to the ownership now demand our attention.

4. The property was originally owned by Jonathan Wiggins, who conveyed it, March 23, 1863, to A. J. Berry and James W. Berry.

5. April 30, 1866, James W. Berry conveyed the undivided one-half of the land to A. J. Berry. The deed was recorded May 1, 1866.

6. December 16, 1868, A. J. Berry executed a deed for all the land to James W. Berry, which was duly recorded October 5, 1869. The title of the land and liens of the parties are thus far shown by the proper county records.

7. Plaintiffs allege in their pleadings that James W. Berry purchased A. J. Berry's interest in the land prior to the rendition of the judgment in favor of the First National Bank of Newton, and immediately went into possession under

his purchase, which was in 1863 or 1864, and that the deed executed by A. J. Berry to James W. was intended to convey the legal title acquired under this purchase. It is also claimed that James W. continued in the actual possession of the land until after the rendition of the judgment in favor of the bank.

8. Plaintiffs also allege that the deed for the undivided half of the land, executed by James W. to A. J. Berry, in 1866, was without consideration and voluntary, and made to defraud creditors, and for that reason void as against the claim of plaintiffs and the creditors of James W. Berry.

9. It is also charged that the First National Bank of Newton, at the time of the rendition of the judgment and the sale of the land thereon, had both constructive and actual notice of the interest of James W. Berry in the land and the equities of his creditors to subject it in satisfaction of his debts.

Thus far the questions of fact in dispute between the parties involve—*First*, the purchase of the land by James W., in 1863 or 1864, prior to the judgment in favor of the bank; *second*, the good faith of the parties to the deed made in 1866 by James W. to A. J. Berry for the undivided one-half of the land; *third*, the notice, constructive and actual, of the plaintiff in execution of the interest of James W. in the land, and the equities of plaintiffs to subject the same to their judgment. These questions will be now considered and determined in the order above stated.

II. There is no conflict in the evidence so far as it involves the facts relating to the purchase of the land by James W., in 1863 or 1864, and the circumstances of the conveyance of the undivided one-half, in 1866, to A. J. Berry. The person last named testifies directly and clearly to the sale at the time mentioned, and the payment of the consideration, partly at that time and the balance at a subsequent day. His direct testimony is not contradicted, but is supported by the fact, clearly established by more than one witness, that James

W. went into the possession of the property at the time mentioned and continued therein, making improvements upon and using the land as his own.   It is also shown by the testimony of A. J. Berry that the deed executed to him by James W., in 1866, was without consideration, and was made for the purpose of protecting him from liability, which he feared might arise, in a threatened criminal prosecution.   There is no testimony contradicting this witness upon this point. James W. Berry died before this action was commenced. No act of his is shown inconsistent with his purchase of the land at the time stated, and its continuous ownership to the day of his death.

I conclude that the land was in fact the property of James W. Berry when the respective judgments under which the parties to this suit set up their claims were rendered.

III.   I am required next to determine whether defendant. is chargeable with notice of the fact of the ownership of the land by James W. Berry and the equity of plaintiffs to enforce the judgment against the land.

I will leave out of view the possession of the land by James W. Berry and the arguments based thereon supporting the position that the defendant is chargeable with constructive notice of plaintiffs' equities.   I will confine our consideration to the evidence, which, I think, clearly establishes actual notice on the part of the plaintiff in the judgment under which defendant in this action claims.   The proposition that defendant, as the assignee of the certificate of sale issued by the sheriff, stands in the shoes of the plaintiff in execution and can escape from no equities existing against the bank when it assigned the certificate, is not disputed in this case; it must be regarded as a correct rule.

D. L. Clark, the president of the bank, and as such having had charge of the collection of the judgment under which defendant claims, testifies directly and positively that in the prosecution of the business he made inquiry of A. J. and James W. Berry in regard to the claim of the latter to the

land, which the witness had knowledge of from other sources. I can present the testimony of this witness better in his own language, which we will quote from the record, viz.: "I had heard that James W. Berry claimed this land; that is, the land in controversy. I asked him about his title to the land, and, as near as I can tell you now, he said that he and his father had bought the land together, and he had arranged with his father that he was to have the other half of the land. * * I cannot tell now how much he claimed to have paid his father for that half, but I think as high as four or five hundred dollars." It is proper to state here that A. J. Berry was the father of James W. This witness, in another deposition, uses this language:

"I know that James W. Berry made a deed to A. J. Berry for the undivided half of the land in controversy. I cannot say when I first learned the consideration, but when I was looking up the Berry matter I found the deed was made to avoid a prosecution. I can't say how I learned it, but I think I learned it from the Berrys, that A. J. Berry did not pay him anything for the consideration of that deed. I can't say now when I learned that, but it was when James W. Berry was living on that land."

He further testified that he obtained the information in regard to the ownership of the land while pursuing investigations as president of the bank, with a view to the collection of the judgment. He obtained the information prior to the sheriff's sale. The witness also states that James W. Berry asserted, in response to an inquiry, that he had *no title* to the land. If this conversation was had before the deed was made, in 1868, the assertion was true, for the legal title prior to that date was in A. J. Berry. It would seem to be probable that the statement was made prior to that time, for the witness was seeking information in regard to James W. Berry's interest, knowing that it did not appear of record, his interest having been conveyed to his father by the deed of 1866. It will be observed that the declaration of James W. was as to

his title, not as to *his interest*. He did not deny having an interest acquired by the purchase of the property, which in fact he did have.

The foregoing testimony is not contradicted. It leads us to the conclusion that the plaintiff in the judgment is chargeable with actual notice of the interest of James W. Berry in the land.

IV. The defendant insists that as plaintiffs became creditors of James W. Berry after the execution of the deed to A. J. Berry, they cannot subject the land to the judgment. The position is based upon the view that voluntary and fraudulent conveyances are valid against subsequent creditors. The decisions of this court are hardly reconcilable upon the question here raised. The position of defendant's counsel seems to be supported by *Lyman v. Cessford et al.*, 15 Iowa, 229; *Fifield. v. Gaston*, 12 Id., 218; and *Whitescarver v. Bonney*, 9 Id., 480. The contrary doctrine, that a deed intentionally made to defraud existing creditors will be held void as to subsequent creditors, is announced in *Harrison v. Kramer*, 3 Iowa, 543; *Hook v. Mowre*, 17 Id., 195; and *Gardner v. Baker*, 25 Id., 343. It is undoubtedly in accord with the current of authorities. See Story's Equity, § 361, and notes; Bump on Fraudulent Conveyances, 326. I am disposed now to follow it, as I regard it in harmony with reason and the principles of equity, and sanctioned by the more recent decisions of this court.

It will be observed that the deed of 1876, which we have found to be fraudulent, conveys the undivided one-half of the land. The rule we have just considered is applicable in this case to no more than that interest.

V. The defendant in his answer charges that plaintiffs, by their acts and declarations, induced him to believe that the judgment under which he claims was a lien upon the land in controversy, and they are, therefore, now estopped to set up their judgment against him. We do not find these allegations of the answer to be supported by the testimony. We dis-

cover nothing in the acts or declarations of plaintiffs which could have deceived or misled defendant.

VI. It is insisted by defendant that plaintiffs, by passively permitting him to redeem from the sheriff's sale, without setting up their claim, are estopped now to do so. The reply to this position is that plaintiffs were not informed of the fact that James W. Berry had purchased and paid for all of the land, and that his deed to his father was without consideration and fraudulent, until after defendant had made the redemption and procured the assignment of the certificate issued by the sheriff. So far as the county records would impart information upon the subject, plaintiffs were induced thereby to believe, without further information, that they held no lien upon the land. The undivided one-half of the land conveyed to James W. by Wiggins appeared by the records to have been reconveyed to A. J. Berry. In ignorance of the fraudulent character of that deed and the purchase of the other undivided half of the land by James W. from A. J. Berry, of which the records imparted no notice, plaintiffs may have supposed that they held no right to subject the land to their judgment. They cannot, therefore, be charged with the consequences of passive permission of the defendant in making the redemption, which, under the rule relied upon by counsel, would have followed had plaintiffs fully understood their rights.

But, counsel urge, the plaintiffs were derelict in not informing themselves of the facts upon which they now rely to support their rights. We find nothing in the record to warrant the conclusion that, in this respect, plaintiffs were actually negligent. It may be said, with truth, that plaintiffs were under obligations to ascertain the truth for the protection of their rights, not at all different from those which rested upon the plaintiff in the judgment to use prudent efforts to discover the condition of the ownership of the property. Surely, if neither party had cause to suspect that the county record did not truly disclose it, the law would require neither to

inquire elsewhere for information on the subject. Plaintiffs had no information to arouse inquiry. But the bank had, and its proper officer, in prosecuting such inquiry, discovered that James W. Berry held the equitable title to the land, or that in equity it was subject to his debts. The defendant, standing in the shoes of the bank, is in no condition to claim an equity in the matter superior to plaintiffs'.