PRINCE *versus* THE OCEAN INSURANCE COMPANY.

Whether the master of a disabled vessel has authority to sell her for the benefit of those concerned, is to be alone determined by the circumstances and condition of the vessel, at the time and place where the sale is made.

When a survey is called upon such disabled vessel, it is presumed to be correct, but is not conclusive; it cannot *control* the rights of the parties, but is important evidence, designed generally to protect the rights of all interested.

Where the master, as such, makes sale of his vessel on account of its injury, he must show that he proceeded correctly, and that the sale was justifiable. To establish this, it must have arisen from *necessity*.

In instructing the jury as to the necessity under which a sale may be effected, no particular form of words is necessary. Any mode of expression by which the jury will clearly understand, that to justify the proceedings it must appear that the master, under the circumstances, acted for the good of all, is sufficient.

Thus, if the jury are told there must be an *apparent* necessity for the sale, existing at the time and place, such instruction will be all that is required. No qualification to intensify the term *necessity*, is necessary.

A master owning a part of the vessel thus sold, is justifiable under the same circumstances as if he was not a part owner.

And where a sale is thus made of a vessel *insured*, no abandonment is required for the assured to recover for a total loss.

On Exceptions from *Nisi Prius*, Howard, J. presiding.

Assumpsit, on a policy of insurance on five sixteenths of the bark St. Lawrence, dated Feb. 7, 1853, for one year.

The general issue was pleaded and joined.

The execution of the policy and the interest of the assured were not disputed.

Evidence was introduced by plaintiff, tending to show, that, on May 19, 1853, between Aspinwall and Porto Bello, the bark run on to a coral reef and injured her materially; that in the afternoon of the same day she arrived at Aspinwall, and constant pumping was required. After she was discharged she did not leak at all. But the keel was settled under the mast, the step of the mast mashed, some of her copper torn off, the keel bruised considerably, her keelson parted and the port bilge raised up.

That at Aspinwall no repairs could be made, and on May 30, a survey was held by J. B. McKinstry, commander of steamer Philadelphia, S. N. Staples, master of schooner Wm. Mason, and Wm. Thomas, who signed the following certificate : —

" The undersigned have held a survey of the bark St. Lawrence, of Portland, and find that the keelson at the step of the mainmast is broken and settled some three inches, and that the port bilge between the fore and mainmast is raised some four inches. Her keel, so far as can be seen, is much broomed, and the copper torn off. So far as we can ascertain, now being light, she is making about ten inches of water per hour. We are of opinion that it would cost much beyond the value of the bark to heave her out and make the requisite repairs in this bay. In this survey we have

not had the opinion of a mechanic, Mr. Scott being too ill to attend, by the advice of his surgeon."

That under these circumstances, the captain, as agent of the underwriters, advertised and sold her at auction for six hundred dollars.

The defendants also introduced evidence tending to show, that the vessel was but little damaged; that she might have been taken to Carthegena, 48 hours sail from Aspinwall, and repaired; that the purchaser made but slight repairs upon her at Baltimore, where she soon after arrived.

There was much evidence in the case as to the condition of the vessel after her injury, and it also appeared that the master was part owner.

Steam communication was had with the Isthmus twice a month, but no notice was given defendants of the disaster before the sale.

Upon the evidence, the counsel for the plaintiff contended, that he was entitled to recover as for a total loss. The counsel for the defendant contended, on the other hand, that, on the testimony, the plaintiff could not recover without proof of an abandonment; that, even if the plaintiff had a right to abandon after his arrival at Navy Bay, before a sale of the vessel, yet the facts proved did not show such a necessity for a sale as would justify the master and owner to sell the vessel, and thus avoid the necessity of an abandonment; that, under the circumstances, the insurers were entitled to be notified, and to exercise the privilege of taking the vessel; that, if the owner would recover for a total loss, under such circumstances, he must first abandon, and not transfer the title to the vessel without notice, and then claim to recover for a total loss; that, being owner, his sale passed the title, whether there was such a necessity as the law requires to justify a sale or not; that, being owner, the master could not be considered as the agent of the insurers, so as to render his acts as agent binding upon them, if not justifiable on other grounds; that it was the duty of the master and owner under such circumstances, to notify

the insurers, and take measures to preserve the vessel, for a reasonable time, until they could be heard from, and if he claimed a total loss, to abandon; that, not having done so, not having abandoned, but having sold the vessel, his claim could be only for a partial loss, and this must be predicated upon the expense of getting the vessel to a port of repair, and what the repairs would cost, upon the terms of the policy, and established legal principles in such cases.

He further contended, that, under the circumstances, it was the duty of the master and owner to have made the experiment of putting the vessel in ballast, and thus ascertaining her condition, and thus make the experiment of getting her to Carthagena, or some other port of repair, before selling her; that the facts show that such an effort would have been successful, if made, and that no necessity for a sale could have existed or been presumed, until such an effort had been made.

But the Court, among other instructions not herein stated, instructed the jury that the question turned upon what transpired at Navy Bay, and not upon what occurred afterwards, but that what occurred afterwards, might be taken into consideration as showing the existing state of facts there.

That a survey is presumed to be correct, but is not conclusive; it does not control the rights of the parties, but is to be considered an important transaction, designed generally to protect the rights of all interested.

That when a vessel is so injured, by perils insured against, that she cannot be repaired without exceeding one-half her value, after deducting one-third new for old, she may be abandoned to the insurers.

That the interest of the master and owner is the same, whether he abandons or sells. That as to the right to abandon, the jury would inquire, whether the cost of repairs at Navy Bay would have exceeded one-half the value, making the deduction of one-third new for old, before stated.

That if a sale was justifiable, the master had a right to

sell; but the burden is on him to show that he proceeded correctly, and that the sale was justifiable.

That the sale by the master is justifiable, when an owner, of reasonable prudence and discretion, under the same circumstances, would, in the exercise of good faith and a sound discretion, have directed the sale, from an opinion that the vessel could not be delivered from the peril, or without the hazard of expense greatly disproportionate to her real value.

That the master, in such cases, acts under the pressure of an emergency, and must decide, but to authorize a sale by him, there must be an apparent necessity for it, existing at the time and on the spot. If there was such a necessity apparent, the master would be justified, though subsequent events should show that he might have taken a different course with success.

The sale would be justifiable, if there was such an apparent necessity for it, and the master acted in good faith, and in the exercise of his best judgment, even if it was shown by subsequent events, that he acted unwisely.

That where the sale is thus necessary and justifiable, and has transferred the property, no abandonment is necessary.

The question was submitted to the jury, as a matter of fact, whether there was such an apparent necessity for selling the vessel under the circumstances. If so, the plaintiff was entitled to recover for a total loss.

If the jury found no such necessity, or that the master acted heedlessly, and without the exercise of his best judgment, then he would not be justified. Subsequent events might be adduced to show that he did not act faithfully and properly or in the exercise of a sound discretion.

Instructions were also given as to the principles to guide them in estimating for a total or partial loss.

The counsel for defendants then requested the following instructions : —

1st.  That as a matter of law, the facts proved do not establish such a necessity as would justify the master, being

a part, owner, in making a sale of the vessel; and, consequently, the plaintiff cannot recover for a total loss, not having abandoned, and not having the power to abandon; which the Court declined to give.

· 2d. That the master, being part owner, cannot, in this case, be considered as the agent of the insurers, and his acts as their agent do not bind them on that ground; which was also declined by the Court.

3d. That unseaworthiness alone would not justify a sale, without other circumstances; that to constitute such a necessity as would justify a sale, there must be such an imperious, uncontrollable necessity as left no other reasonable course to be adopted; which instruction the Court refused to give.

4th. That to constitute such a necessity as would justify a sale, the vessel must be in such a situation as left no reasonable chance of saving any part of her for the insurers, except by selling her. Upon this point, the Court said that he could give no other instructions than he had already given.

5th. That to constitute such a necessity as would justify a sale, the vessel must be apparently as much totally lost to the owner, as if she was destroyed in fact. This instruction the Court declined to give.

The jury found a verdict for plaintiff, for a total loss, and defendants excepted.

*Fessenden & Butler,* for defendants, said this was the first case where the Court was called upon to define the necessity under which a master may sell; the Court should furnish the definition for the jury; it was an imperious uncontrollable necessity; and they argued this position at length. They also supported the positions taken at the trial, and relied on the following cases:— *Pierce* v. *The Ocean Ins. Co.,* 18 Pick. 88; *Robinson* v. *Commonwealth Ins. Co.,* 3 Sumner, 220; *Patapsco Ins. Co.* v. *Southgate,* 5 Peters, 604; *Gordon* v. *Mass. Fire & Marine Ins. Co.* 2 Pick. 249; *Bryant* v. *Com. Ins. Co.,* 13 Pick. 543; *Brig Sarah Anne,* 2 Sumner, 287; *Hall* v. *Franklin Ins. Co.,* 9 Pick.

466; *Winn* v. *Col. Ins. Co.,* 12 Pick. 270; *American Ins. Co.* v. *Senter,* 4 Wend. 45; *Hayman* v. *Holton & al.,* 5 Esp. 64; *Schr. Tilton,* 5 Mason, 465; *Somes* v. *Sugrue,* 4 Car. & P. 276; 3 Kent's Com. 173; *Parker* v. *Hunter,* 7 Mees. & Wels. 322.

*Shepley & Dana,* for plaintiff, denied that the main question argued by defendants' counsel was the one to be presented to this Court; that question was presented to the jury; now the only question is, whether the instructions given at the trial were correct, and in support of the instructions given, cited *N. E. Ins. Co.* v. *Sarah Ann,* 13 Pet. 401; 3 Kent's Com. 324, 325; *Bradley* v. *Insurance Company,* 12 Peters, 378; *Gordon* v. *Mass. Ins. Co.,* 2 Pick. 264; *The Fortitude,* 3 Sumner, 228; *Peele* v. *Ins. Co.,* 3 Mason, 27; *Dunham* v. *Ins. Co.,* 11 Johns. 315; *Orrok* v. *Ins. Co.,* 21 Pick. 456; *Hunter* v. *Parker,* 7 Mees. & Wels. 342; 2 Phil. on Ins. 307; *Fuller* v. *Kennebec Ins. Co.,* 31 Maine, 325; *Idle* v. *Ins. Co.,* 8 Taunt. 755; *Amer. Ins. Co.* v. *Center,* 4 Wend. 52; *Patapsco Ins. Co.* v. *Southgate,* 5 Peters, 620; *Gordon* v. *Mass. Ins. Co.,* 2 Pick. 249.

They also argued that defendants' requested instructions were properly withheld.

SHEPLEY, C. J. — The plaintiff claims to recover for a total loss of five-sixteenth parts of the bark St. Lawrence. That vessel, being on a voyage from New York to Aspinwall, on May 19, 1853, appears to have struck a coral reef, in Navy Bay, by which a small piece of the rock penetrated in one place entirely through her bottom, and in two other places nearly through. She appears to have proceeded to her port of destination, where her cargo was discharged.

On the thirtieth day of the same month, a survey upon her, called through the agency of the American consul, reported, that her keelson was broken and settled some three inches, that her port bilge was raised some four inches, that her keel, so far as it could be seen, was much broomed, and

the copper torn off. The persons called to make the survey appear to have been competent and impartial. One was an officer in the United States Navy, having been employed in the merchant service and then having the command of a steamer. One of the others, to have been a present, and the other a past ship master. They agreed upon a result, stating that it would cost much beyond the value of the bark to heave her out and make the requisite repairs in that bay. There is a difference in the testimony, whether it would have been safe or prudent to have proceeded with her to a place where her bottom could have been examined and repairs made. The master caused her to be sold at auction. The purchaser appears to have sent her with a cargo to Baltimore, without making any, or any important, repairs.

The authority of a master to sell his vessel or cargo, under any circumstances, was not admitted by the ancient maritime law.

As commerce and navigation increased and extended, it was perceived that masters, without fault, might be so situated, that they could not consult any person interested, and that they must abandon the property as wholly lost or sell what remained of it. The authority to sell was fully conceded by the mercantile law. The remaining difficulty was to so define and limit that authority, that its abuse might be prevented. For this purpose, different language appears to have been used in different judicial judgments.

It may be useful to notice that used in some of the leading cases in England and in this country, to ascertain whether any particular language is required to be used, and if so, what it is.

LORD MANSFIELD, in his opinion in the case of *Miller* v. *Fletcher*, Doug. 231, says, " I left it to the jury to determine whether what the captain had done, was for the benefit of the concerned." The captain had sold part of the cargo, and had attempted to sell the vessel without success, and had left her to be sold.

Prince *v*. The Ocean Insurance Company.

LORD ELLENBOROUGH, in the case of *Hayman* v. *Molton*, 5 Esp. 65, speaking respecting the sale of a vessel by the master, says, "where a case of urgent necessity and extraordinary difficulty occurs; where a ship has received irremediable injury, I am disposed to go as far as I can to support what has been contended for by Mr. Erskine, that under such circumstances, the captain, acting *bona fide*, and for the benefit of the owners, might sell the ship for the benefit of the owners. This is the disposition of my mind; but I cannot lay it down as positive law. At all events, it can only be justified by extreme necessity and the most pure good faith; that is, if the vessel is in such a state as it would be probable the owners themselves, if on the spot, would have acted in the same way as the captain has done, and have sold the ship; I shall, therefore, leave it to the jury to say whether, in this case, there was such a necessity as called upon the captain, acting for the benefit of his owners, to sell the ship." The case of *Milles* v. *Fletcher* does not appear to have been noticed by the Court or counsel.

LORD STOWELL, in the case of the *Fanny and Elmira*, Edw. 117, says, "In the first place, it must be shown that there was a necessity, and then it remains to be considered whether it was such as would, by law, give the master a right to sell."

Mr. JUSTICE PARK, in the case of *Cannon* v. *Meadburn*, 1 Bing. 243, says, "Nothing, therefore, but extreme necessity, will justify the master in disposing of the cargo."

GIFFORD, C. J., says, in the case of *Robertson* v. *Clarke*, 1 Bing. 445, "This principle may be clearly laid down, that a sale can only be permitted in case of urgent necessity; that it must be *bona fide* for the benefit of all concerned."

The question has been presented several times in the Supreme Court of Massachusetts. PARKER, C. J., in the case of *Gordon* v. *The Mass. F. & M. Ins. Co.*, 2 Pick. 249, says, "It is certain that a master of a vessel, as such,

has no authority to sell the vessel or cargo, unless in a case of extreme necessity."

PUTNAM, J., in the case of *Hall* v. *Franklin Ins. Co.*, 9 Pick. 466, after quoting the language referred to in the last case, says, " There must be something more than expediency in the case; the sale should be indispensably requisite."

The same Justice, in the case of *Bryant* v. *Com. Ins. Co.*, 13 Pick. 543, remarked, " It is for the plaintiff to prove the legal necessity. * * * They must maintain that there was good intention on the part of the master, and that he was compelled by the necessity of the case to act."

SHAW, C. J., in the case of *Peirce* v. *The Ocean Ins. Co.*, 18 Pick. 83, having referred to the former cases as settling the law, says, " Here is not that imperious, uncontrollable necessity for a sale, which is requisite to confer such an authority on a master."

The question has, at different times, been presented in the courts of the United States.

Mr. JUSTICE STORY, in the case of the schooner Tilton, 5 Mason, 465, says, " My judgment is, upon the most careful survey of the authorities, as well as upon general principles of law, that the master has a right to sell the ship in cases of urgent necessity. * * * I adopt the argument at the bar, that it must be proved that there was a pressing necessity to justify the sale."

The same Justice, in the case of *Pope* v. *Nickerson*, 3 Story, 465, says, " He had no right to sell the same, unless in case of necessity; that is, of a moral necessity to prevent a greater loss to the shippers."

So he had before stated, in the case of *Robinson* v. *Com. Ins. Co.* 3 Sum. 226, " The master has an authority to sell only in cases of extreme necessity; not indeed of physical necessity, but of moral necessity."

In the case of the *Patapsco Ins. Co.* v. *Southgate*, 5 Peters, 604, the plaintiff's counsel appear to have submitted a request for instructions, that the sale should be found to be " absolutely necessary and for the interest of all con-

cerned." While the defendant's counsel requested instructions, " that no necessity will justify a sale by the master, unless it be urgent and inevitable; in other words justifiable."

The instructions prayed by each were given.

ARNOULD states the law thus, — " It is obvious, that nothing but a case of absolute and extreme necessity, such as sweeps away all ordinary rules before it, can justify the master in such a sale." Arnould on Ins. 89.

KENT states, " The master of an insured ship injured by the perils of the sea and not competent to complete the voyage may sell her in case of necessity; as where the ship is in a place in which she cannot be repaired; or the expense of repairing would be extravagant and exceed her value; or he had no means in his possession, and was not able to raise any." 3 Kent's Com. 332.

PHILLIPS says, " The authority of a master in case of extremity to sell a disabled ship, rests upon much the same principles as that to raise funds on bottomry." * * * " The master is authorized to manage and dispose of the ship and cargo in the same manner as a prudent owner would do in like circumstances, being influenced by predominating motives to prosecute the voyage." 2 Phill. on Ins. 305.

Lord ELDON is reported to have stated in the case of *Smith* v. *Robertson,* 2 Dow's Parl. Cas. 479, " The very ground upon which the authority rests, namely, extreme necessity, is pregnant with uncertainty; as the facts, which create it, will vary in their effect upon minds differently constituted."

Mr. Justice PUTNAM, in the case of *Hall* v. *Franklin Ins. Co.,* says, " We mean a necessity, which leaves no alternative; which prescribes the law for itself and puts the party in a positive compulsion to act."

Lord STOWELL had before stated, in the case of *the Gratitude,* 3 Rob. Adm. 240, " The law of cases of necessity is not well furnished with precise rules; necessity creates the

law; it supersedes rules; and whatever is just and reasonable is likewise law."

Mr. Justice STORY also attempted to explain the meaning of necessity as thus used; he says, in the case of *Robinson* v. *Com. Ins. Co.*, "By moral necessity, I mean not an overwhelming and irresistible calamity or force, but a strong and urgent, and if one may so say, a vehement exigency, which justifies and requires the sale to be made as a proper matter of duty to the owner to prevent a greater sacrifice or a total ruin of the property."

TINDAL, C. J., had before said, in the case of *Somes* v. *Sugrue*, 4 Car. & P. 276, "A great deal has been said about the word necessity, undoubtedly it is not to be confined to or so strictly taken as it is in its ordinary acceptation. There can in such case be neither a legal necessity, nor a physical necessity; and therefore, it must mean a moral necessity; and the question will be, whether the circumstances were such, that a person of prudent and sound mind could have a doubt as to the course he ought to pursue."

With all these explanations, the necessity which authorizes and requires the master to sell, being a moral necessity, can be, when carefully examined, no more than a faithful performance of a duty imposed by the circumstances in which he is placed. Being called upon from the best information to be obtained respecting the actual condition of his vessel and respecting the danger of allowing her to remain as she is, and the danger and expense of repairing her there and of proceeding elsewhere, to determine whether he must abandon her as a wreck or repair her, or attempt to obtain something for her by sale or otherwise, he is under moral obligation to pursue that course and make that decision which will best promote the interests of all for whom he has become the agent. He must do wrong if he does not do so. He has no alternative left, and must sell, if, in the faithful discharge of that duty, he determines, that the calamity will be most alleviated and the interests of all be

best served by a sale. A moral necessity for a sale can mean no more.

The inquiry arises in this case, what idea would be presented to the minds of jurors by instructing them, that there must be an absolute, urgent, pressing, imperious, uncontrollable, extreme and inevitable moral necessity to authorize a sale? If an explanation were asked by a juror of the meaning, might the answer be, it means, that he must act faithfully and discharge his duty to all; the necessity is a necessity to sell, if he could not so act for all without doing it. There is a fact underlying this moral necessity or duty, from which alone it can arise, that the vessel has been so disabled as to render it unsafe for her to proceed on her voyage as she is. This fact must be established before the master's authority is so enlarged, that he becomes the agent of all concerned and clothed with power to judge for all, what must be done for their good.

With respect to the authority of the master to sell, the jury were in this case instructed, "that the question turned upon what transpired at Navy Bay, and not upon what occurred afterwards." This will be found to be the settled rule of law, as stated in the authorities cited.

The instructions respecting the effect of the surveyor's report, and the lack of proof of abandonment, are also fully sustained by authority.

The principal complaint rests upon the instructions respecting the right of the master to sell the vessel. One especial cause is, that no adjective was used as connected with the word necessity to increase or intensify its meaning.

In the case of *Milles* v. *Fletcher*, the word necessity does not appear to have been used. Lord MANSFIELD, in the opinion, says, "The captain, when he came to New York, had no express order, but he had an implied authority from both sides to do what was right and fit to be done, as none of them had agents in the place; and whatever it was right for him to have done, if it had been his own ship and cargo, the underwriter must answer for the consequences of, because this is within the contract of indemnity."

In the case of *Idle* v. *Royal Exchange Assur. Co.*, 8 Taun. 755, DALLAS, C. J., says, "The authority of *Milles* v. *Fletcher* has been recognized in a great number of subsequent cases, and has never, that I am aware of, been in the slightest degree impeached."

In the case of *The Patapsco Ins. Co.* v. *Southgate,* adjuncts to the word necessity were freely used, and yet it is stated in the opinion, that the doctrine of the case of *Milles* v. *Fletcher,* "has been repeatedly sanctioned by the later decisions both in England and in this country."

In the case of *Hayman* v. *Molton,* while urgent necessity is spoken of, the case appears to have been left to the jury without any expletive to find, "whether there was such necessity as called upon the captain, acting for the benefit of his owners, to sell the ship."

In the case of *Greene* v. *Royal Exchange Assur. Co.,* 6 Taun. 68, the opinion states:—"It ought, therefore, to have been left to the jury, whether a prudent man would have sold the ship, in these circumstances, or have repaired her, and proceeded with her to earn what he could."

In the case of *Robertson* v. *Clarke,* the question left by the instructions to the jury appears to have been to find, "whether they thought the captain justified in selling the vessel, under the circumstances, which had been proved; and (he) told them, if they thought the sale a matter of necessity, they must find for the plaintiff."

In the case of *Cambridge* v. *Anderton,* 2 B. & C. 691, ABBOTT, C. J., told the jury, "that if, under the circumstances in evidence, they thought the ship was not repairable at all, or that when repaired she would not be worth the expense of doing the repairs, the plaintiffs were entitled to recover for a total loss."

In the case of *Somes* v. *Sugrue,* 4 Car. & P. 276, TINDAL, C. J., in his instructions to the jury, is reported to have said, "The only question in this case is, whether, under the circumstances, there has or has not been a total loss of the vessel, if at all, in consequence of the sale, and that will

depend upon, whether the sale was a sale, that was neces-
sary for the benefit of the parties concerned. * * * A
captain has no power to sell, except from necessity, con-
sidered as an impulse acting morally to excuse his depar-
ture from the original duty cast upon him of navigating
and bringing back the vessel. * * * If you think that if
the owner himself had been on the spot uninsured, he, in
the exercise of sound discretion, would have repaired the
vessel, or that if an agent of the underwriters had been
there, he, exercising such discretion, would have repaired,
then this captain ought certainly to have done so. But
if they would not have done so, then, I think, this captain
was not compellable to repair, and the sale, in such case,
will have taken place under a justifiable necessity."

In the case of *Hunter* v. *Parker*, 7 Mees. & Wels. 322,
the questions on this point as left to the jury were, "whether
the master in selling the ship had acted *bona fide* and with
the intention of doing the best for the advantage of the
owners and of all parties concerned." And "whether there
was an actual necessity for the sale."

In the case of *Gordon* v. *Mass. F. & M. Ins. Co.*,
although it is incorrectly said all " the Judges, who have ad-
verted to this subject, except Lord MANSFIELD, have put the
authority of the master to sell upon *extreme* necessity,"
yet the same Judge, when he comes to state definitely,
what the instructions to the jury should have been, uses this
language: "The instruction should have been, that if they
were satisfied from all the evidence, giving due weight to
the opinion of the surveyors, that the sale was necessary,
then the sale constituted a total loss." These instructions
prescribed, must have been carefully considered, for the case
was to be presented for a new trial, and the very language
might be expected to be used on that trial in instructions to
the jury.

It is not common to find different persons using the same
language to communicate the same idea. An examination
of the decided cases shows, that the omission of any epithet

in connexion with the word necessity cannot be considered erroneous.

It is on the circumstances ascertained by the best information, as they are presented at the time, that the surveyors and master must act and decide. "An apparent necessity for it existing at the time," could communicate no other idea to the jury, than a necessity, which appears to exist at the time. The intention appears to have been to inform the jury, that they were to judge of the necessity of the sale upon the proof of the circumstances, as they were presented to the master. This would be correct. And it is not perceived, that they could have been led into any erroneous judgment by the use of that language. The question is not, whether it was the best suited and most appropriate which could have been used, but whether the jury could have been led into any misapprehension of duty by its use. The presiding Judge had most respectable authority for its use.

In the case of *Freeman* v. *East India Company*, 5 B. & A. 617, ABBOTT, C. J., says, "And under these circumstances a sale of the cargo or any part of it by the master, could confer no title on the purchaser, unless there was *an apparent necessity* for such sale. That question I left for the jury, and they were clearly of opinion, that there was in this case no such *apparent necessity.*" In that case, HOLROYD, J., speaks of an absolute necessity for a sale. And BEST, J., says, "The case of absolute necessity constitutes the only exception to the general rule." And yet he says, "I think the case was properly left to the jury, and that there ought to be no rule granted." No important distinction appears to have been presented to their minds in the use of the words absolute necessity and apparent necessity. They appear to have regarded them as different forms of language to communicate the same idea.

Mr. PHILLIPS, when stating the result of the decided cases, uses this language:—"A sale, whether by the owner or master, will be justified or not in respect to the underwriters according to the *apparent circumstances* when atten-

tively and fairly examined and considered; the estimates, opinions and advice of competent persons, who can be consulted being first obtained; and not according to the result of an experiment of the purchaser in floating, recovering and repairing the vessel." 2 Phill. 307.

The other instructions on this point appear to have been taken from, or to have been authorized by, the decided cases already noticed. The testimony on this point was quite different and not easily reconcilable. It was especially within the province of the jury to decide upon it. There is no motion to set aside the verdict as having been found against the evidence. Nor is it intended to intimate, that it could have been of importance, for it is the duty of the jury, and not of the Court, to decide upon the credibility of testimony.

The first and second requested instructions appear to have been based upon the position, that the master, being a part owner, would not have the same authority as a master, who was not an owner. The settled law is otherwise. "Whether the sale be by the owner or the captain will make no difference if the circumstances justified the selling, and the sale was honestly and fairly conducted." *Idle* v. *Royal Ex. Assur. Co.*, before cited.

The third request was for instruction, that there should be such an imperious and uncontrollable necessity as left no other reasonable course to be adopted. Although the language used in the request may have been selected from the opinion in the case of *Peirce* v. *Ocean Ins. Co.*, it has become apparent from an examination of the decided cases, that the law does not require the use of any form of words or of any adjuncts to intensify the word necessity. The jury would be instructed without the use of any such words, that there must be a necessity that left no alternative or other course to be pursued consistently with a faithful discharge of duty, and that is all which the law requires.

The fourth and fifth requested instructions would have

deprived the master of authority conferred upon him by law, as exhibited in all the well considered cases.

*Exceptions overruled.*