W. H. CROOKS, Appellant, v. KATE JENKINS, W. T. JEN-
KINS, WILLIAM PATTERSON and CHRISTINA PATTERSON.

Mortgages: PRIORITY OF LIENS.  Where a deed was given to secure
1  an existing indebtedness from the grantor to the grantee, and there-
   after the grantor gave a mortgage to secure his debt to another,
   which was recorded, a subsequent agreement that the deed should
   stand as security for an indebtedness incurred after execution of
   the mortgage, rendered the lien therefor inferior to the mortgage.

Possession of land: CONSTRUCTIVE NOTICE.  Where one is in posses-
2  sion of real property, those dealing with the title are charged with
   such knowledge of his possession and right therein, as an inquiry
   would have developed.

*Appeal from Polk District Court.*— HON. W. H. McHENRY,
                    Judge.

                FRIDAY, JUNE 10, 1904.

. ACTION to foreclose a mortgage executed by Mrs. W. T.
Jenkins and husband to plaintiff October 29, 1897, and re-
corded on the day following, to secure the payment of a note
of $775, dated July 13, 1896, and due December 13, 1897,
bearing interest at the rate of eight per cent. per annum.
Mrs. Jenkins and husband conveyed the property mortgaged
to William Patterson April 14, 1897, but the deed was not
recorded until January 1, 1899.  He had been a tenant of
Tascott, from whom Mrs. Jenkins purchased, and continued
in possession as her lessee.  Patterson pleaded that the deed
was made to secure what Jenkins owed him and might become
indebted to him in the future.  The Jenkinses defaulted, and
decree was entered against them as prayed November 29,
1902.  The issues between plaintiff and Patterson were tried
in January, 1903, and a decree entered establishing Patter-
son's claim to the amount of $742 as a lien on the property

superior to plaintiff's mortgage.  The plaintiff appeals.— *Modified.*

*Bowen & Brockett,* for appellant.

*Berryhill & Henry,* for appellees.

LADD, J.— Patterson was in occupancy of the land in controversy as a tenant when Mrs. Jenkins, his daughter, purchased it, and thereafter paid rent to her until she conveyed

1. MORTGAGES: priority of liens.

the property to him in April, 1897.  After receiving the deed, he paid the interest on two mortgages on the property — one of $1,000 and another of $200 — and also the taxes, but no rent, save as these items were to be so applied.  This deed was mailed to Patterson by Mrs. Jenkins from Boone, and in a few days was followed by a letter from her stating, in the words of Mrs. Patterson, that " she had sent us this deed and security for what they owed us — what we would pay on the place.  This letter was to tell us this deed was for security for what we was putting in the place."  At the close she said, " Put away this letter for no one knows what may turn up."  On cross-examination she declared that the letter said, " We have sent you a deed to secure your interest and what we owe you in the place," and that " this was word for word what was in the letter."  Notwithstanding the admonition to preserve it, the communication was lost.  Mrs. Jenkins, who wrote it, testified that it advised her father and mother " they could hold that for the $75.  We didn't owe them any more money.  *  *  *  I never said anything to them at any time about holding it for any other money.  *  *  *  I had said in the letter the deed would be security for the $75.  I never changed that agreement."  No one else pretends to state the contents of the letter, and, from what we have set out, it is apparent that the object disclosed was to secure an existing indebtedness.  True, the subsequent conversations between the parties tended to enlarge the debt to be secured by the deed, but all these

occurred after plaintiff's mortgage had been executed and re-corded. The indebtedness was then but $75, and, in making an agreement thereafter, if any there was, with respect to future advances for interest and taxes, the parties were charged with notice of this mortgage, and such payments made subject thereto. In other words, the lien of plaintiff's mortgage attached to Mrs. Jenkins' equitable title, subject to existing incumbrances, but not to any that the parties by contract, oral or written, might thereafter choose to create.

II.   Prior to taking the mortgage, the plaintiff, with Jenkins, examined the property, and testified that while there he met Patterson, and that the latter, upon inquiry, declared " he was only a tenant there, and had no interest; that the property belonged to his daughter." Jenkins claims to have gone into the house, and upon his return to have asked Crooks if he had found out who owned the place, when Patterson said he had just informed Crooks that he had no interest there, save to pay rent. On the other hand, Patterson denied having any talk with them, and Mrs. Patterson swore that when they were there her husband was away. She further explained that Jenkins came to the house and inquired if the deed had been recorded, and, upon being informed that it had not, left with plaintiff, whom she did not meet. Jenkins con-cealed from the latter the execution of the deed, because, as he explains, it was none of his business. The record suggests no motive on the part of Patterson for falsely representing that he had no other interest in the premises than as tenant, and we are inclined to concur with the trial court in its con-clusion that he did not do so.

III.   The plaintiff took the mortgage without notice of the deed to Patterson, other than the possession of the prem-ises afforded. The doctrine that a purchaser of real estate —. **2. POSSESSION OF LAND: constructive notice.** and a mortgagee has been held to be such — takes the same charged with notice of the equi-ties of a person, other than the vendor, in possession at the time of the purchase, is not questioned. *O'Neill v. Wilcox,*

115 Iowa, 15. But like other general rules, this has its exceptions. Thus, when possession is consistent with the record title, it is presumed to be under such title, and is not notice of outstanding, unrecorded equities. *Rogers v. Hussey,* 36 Iowa, 664; *Brown v. Wade,* 42 Iowa, 647; *Bonnell v. Allerton,* 51 Iowa, 166; *May v. Sturdivant,* 75 Iowa, 116. This is on the ground that, having given notice to the world of his estate in land by a proper record of a conveyance to himself, a possession justified by said recorded title is to be presumed to have been under such title, and is not notice of any other which he may have subsequently acquired, but which, through neglect, he has failed to record. *Dutton v. McReynolds,* 31 Minn. 66, 16 N. W. Rep. 468. So, too, where a vendor remains in possession after a conveyance, such possession, unless long continued, is not notice to subsequent purchasers of any rights reserved inconsistent with his conveyance. *Sprague v. White,* 73 Iowa, 670; *Koon v. Tramel,* 71 Iowa, 132. Such possession is to be presumed to be continued by the sufferance of the purchaser. Appellant contends that there is still another exception, to the effect that possession begun under one kind of right is not notice of another or different interest subsequently obtained by the occupant, unless circumstances direct the purchaser's attention to the change of title, and thereby operate as actual notice. The authorities ordinarily cited by text-writers cannot be said to sustain this proposition. In *Smith v. Miller,* 63 Tex. 72, Miller appears to have been in possession by contract of purchase from the owner, Collins. The latter subsequently conveyed the land to Whitsell, of whom Miller leased it, and subsequently leased it of Whitsell's grantee, Mrs. Smith, against whom Miller afterwards attempted to plead the contract of purchase first mentioned; and it was held that he had by his own acts divested his possession of those attributes which would cause it to put purchasers upon inquiry. By becoming tenant of Whitsell and Mrs. Smith, he renounced his claim to the land as purchaser. The syllabus to the case is not in accord with the decision.

All that was decided in *Bush v. Golden,* 17 Conn. 594, was that possession of a way across a dam by tenants in common was not notice of any special reservation or right in either, as against a mortgagee of the entire tract. The point involved in *Kendall v. Lawrence,* 22 Pick. 540, was the sufficiency of the evidence of possession. In *Dawson v. Danbury Bank,* 15 Mich. 489, the principle as to the continued possession of a vendor after his conveyance was applied to a sale and deed under a decree of foreclosure of a mortgage executed by him. In *Williams v. Sprigg,* 6 Ohio St. 585, the acts of possession by the tenant were held insufficient to put a purchaser on inquiry. In *Red River Valley L. & I. Co. v. Smith,* 7 N. D. 236 (74 N. W. Rep. 194), an excerpt from *Leach v. Ansbacher,* 55 Pa. 85, to the effect that where a party in possession holds a lease, and a purchaser knows it, he may attribute the possession to the lease, and the possession is not constructive notice to him of outstanding equities, was quoted, with apparent approval; but in *Anderson v. Brinser,* 129 Pa. 376 (11 Atl. Rep. 809, 18 Atl. Rep. 520, 6 L. R. A. 205), the expression is disapproved, and declared not to have been essential to a decision of *Leach's Case.* Indeed, we have discovered no case holding that the notice charged by the possession of a tenant is limited to rights incident to his tenancy.

On the contrary, the doctrine has long prevailed in England that the possession of a tenant or lessee is not only notice of all his rights and interests connected with or growing out of the tenancy itself or the lease, but is also notice of all interests acquired by collateral or subsequent agreements. *Daniels v. Davison,* 16 Ves. 249. The same rule has been approved by several courts in this country. *Anderson v. Brinser,* 129 Pa. 376 (11 Atl. Rep. 809, 18 Atl. Rep. 520, 6 L. R. A. 205); *Coari v. Olsen,* 91 Ill. 273; *Buck v. Holloway's Devisees,* 2 J. J. Marsh. 180; *Hull v. Noble,* 40 Me. 481; *Davis v. Briscoe,* 81 Mo. 37; 23 Am. & Eng. Ency. of Law, 500. In a note in section 616 of his work on Equity Jurisprudence, Mr. Pomeroy declares

that, in his opinion, " these decisions are much more in harmony with the general doctrine than those others which have speculated and drawn fine distinctions upon the amount of notice derived from the occupant's original right to the possession. The reasons upon which the whole doctrine rests seem to be conclusive. The possession of a third person is said to put a purchaser upon an inquiry, and he is charged with notice of all that he might have learned by a due and reasonable inquiry of the occupant with respect to every ground, source, and right of his possession. Anything short of this would fail to be reasonable and due inquiry." Patterson and his wife were occupying the property in controversy as a home, and Crooks had no personal knowledge of whether they entered as tenants or otherwise. Instead of inquiring of them, he relied on information from Jenkins, who refrained from telling him of the execution of the deed. Ought they to be bound by the partial statement of one interested in suppressing the truth? Certainly the history of their occupation ought to have no bearing on this question. They were then in possession, and the more reasonable and just rule is that, instead of stopping when the fact that they had been tenants' was ascertained, the plaintiff should have made full inquiry, and, not having done so, he is charged with knowledge of such facts as interrogation of the occupants in all probability would have disclosed. In other words, possession puts every one upon inquiry as to present conditions, and, unless this is obviated by acts of the occupant explaining such possession, as by recording his deed or lease, or by repelling the inference of any claim, as by a conveyance to another, all are conclusively presumed to have such information concerning his present possession as reasonable inquiry would have procured.

IV.    Our conclusion is that plaintiff took his mortgage charged with notice of the deed to Patterson, and that this deed was executed for the purpose of securing the payment of $75, with interest. Whether, as between Mrs. Jenkins and

Patterson, the deed should be regarded as security for subsequent advances, we have no occasion to determine.

Some question is raised as to whether the court had jurisdiction to determine the amount due Patterson from Mrs. Jenkins, in the absence of notice to her of the filing of his cross-petition. Had not the issue been presented by the petition, there might be some force in the suggestion. The plaintiff demanded that, if Patterson's interest be found superior to the mortgage, the latter be declared to hold the deed as trustee to secure the payment of a small sum of money, and prayed that all defendants be required to interplead " for the purpose of determining their rights and liabilities between themselves." The answer of Patterson put these matters in issue, and his cross-petition may as well be eliminated. Mrs. Jenkins, by defaulting, could not deprive the court of jurisdiction to adjudicate the very issues raised by the petition, among which was the liability which the deed was executed to secure.— MODIFIED AND AFFIRMED.