# Kostenbader *et ux. versus* Peters.

1. The English rule that parol evidence is inadmissible to vary a written instrument does not exist in this state.

2. In cases of fraud or mistake as to material facts, parol evidence of what occurred at the execution of the writing is competent to explain the meaning of the parties.

3. Plaintiff contracted to sell land to defendant, when the deed was about to be executed defendant objected to it as it was drawn; another deed was prepared, and executed by her. *Held,* that evidence was admissible for the plaintiff, that after reading the deed she refused to sign it, that after some negotiation she agreed to give defendant ten feet more; that they were measured and marked on the ground, and that the marks called for in the deed when she signed were not where they had been agreed to be, and had been marked.

4. That the deed had been read to her, would not affect her right to have it reformed, if in fact a mistake had been made.

January 28th 1876.    Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and WOODWARD, JJ.

Error to the Court of Common Pleas of *Union county:* Of January Term 1874, No. 5½.

This was an action of trespass, q. c. f., brought November 13th 1871, by Nancy Dersham against Peter Peters. Subsequently to the bringing of the suit, the plaintiff married Moses Kostenbader, who on the 11th of November 1873, was added on the record as plaintiff.

The cause was tried November 12th 1873, before Junkin, P. J., of the 41st district.

On the 26th of January 1865, Nancy Dersham, plaintiff, became the owner of a tract of land containing about 54 acres. This tract was adjoined on the east by land of the defendant. Whilst owning the land, she entered into a contract to sell about 25 acres to Abraham Dersham. A survey was made, and a deed drawn in accordance with it; when the parties came to pass the title, Abraham Dersham declined to accept the deed offered, on the ground that the east and west lines did not extend so far south as he claimed was in accordance with the contract. It was then agreed that a new deed, to meet the difficulty, should be prepared, which was accordingly done; and the deed was executed and delivered to Abraham Dersham on the 11th of April 1868, for 29 acres and 26 perches; the words "more or less," which had been in the deed as drawn, were erased. On the 25th of the same month, A. Dersham conveyed this piece of land to the defendant; part of the courses and distances mentioned in the deed were as follows,

[Kostenbader v. Peters.]

viz. : " Thence along line of John Bitting, south $\frac{1}{4}$° west, 29 perches and 10 feet, to corner of John Bitting's land; thence north 88$\frac{1}{2}$° east, 48-2 perches to the middle of the road near the corner of Peter Peters' ; thence north $\frac{1}{4}$° west, 113-3 perches, along the line of Peter Peters to the beginning." The line, "south $\frac{1}{4}$° west, 29 perches, 10 feet," did not reach "Bitting's corner." The plaintiff claimed that the defendant had not title south of the above-mentioned distance; defendant claimed that the distances must give way to the marks on the ground as called for in the deed. The alleged trespass was committed on that part of the land between the end of the distance and "Bitting's corner."

Mrs. Kostenbader testified that Dersham had taken possession of the *locus in quo*, and that he and defendants had kept possession of it from the time of her conveyance.

For the defendant, Samuel Guffy testified, that he had recently surveyed the land; Bitting pointed out where he claimed his corner to be; witness found traces of five panels of fence; Bitting's corner was south of that; at .5 of a perch north of Bitting's corner he found a sand-stone in the line of the fence, planted as a corner; from this he ran east, to a pine knot driven into the ground; he found the Bitting lane at the south-east corner, where he found two stones set together as a corner about the centre of the lane; and .8 of a perch north of this he found a sand-stone corner in the lane; Bitting showed him these double stones; they were also a corner of Peters' land; witness then ran westward, south 89° west, 48-3 perches, which hit the Bitting corner as pointed out by him; running the line south 89$\frac{1}{4}$ west, it would run to the stone which was .5 of a perch north of the Bitting corner. The line between the two sand-stones ran south of the five panels of fence.

The plaintiffs made the following offer of evidence :—

" That Nancy Dersham sold this tract to Abram Dersham; that a survey was made of the land by Robert Candor, Esquire, under the direction of both parties, according to the number of acres agreed between them should be sold, and that by Esquire Candor's directions stakes were driven by them, in accordance with his survey on the ground, which were some rods north of the point where it is now claimed the calls of the deed would carry the lines; that Abram Dersham refused the deed as made by Robert Candor, and a second deed was made by James Marshall; that the parties went to Abram Dersham's house, where Mrs. Kostenbader, the plaintiff, on the reading of the deed to her, refused to sign it, and after more negotiation she agreed that she would give Abram Dersham ten feet more than was given him by Esquire Candor's survey; that upon the erasure of the words '*more or less*' she signed the deed; that Peter Peters, the defendant, was present during this negotiation; that Mrs. Dersham did not go out with the party to add the

[Kostenbader *v.* Peters.]

10 feet because it was muddy, but Esquire Marshall, Peter Peters, and George Dersham, a son of the plaintiff, took a ten-foot pole out to the land; that the stakes as set by Esquire Candor were still standing; that they measured 10 feet on the western side, which brought the end of that line near to Bitting's lane, not to the fence, and on the eastern side they measured more than 10 feet, but they fixed the corner a rod or more north of where Mr. Guffy mentioned the sand-stone in the middle of the lane; that afterwards when Mr. Brown made the survey they came to the southwestern corner, the sand-stone mentioned by Mr. Guffy was there, and Esquire Marshall stated explicitly that it was not where he put it, and showed a place a rod north of it where he had ordered it to be put; that by the courses and distances in the survey, with the variations in the survey, running a line from Bitting's corner, even as called for, would throw the eastern end of the line a rod or more north of the sand-stone.

"That the sand-stone was not there when the deed was made or signed, and is not in the place where Esquire Marshall, who acted for both parties, put it.

"This offered to show the tract of land, as designated by monuments on the ground, which was sold by Mrs. Dersham to Abram Dersham, and that there was mistake and misapprehension on the part of the grantor in signing the deed, and to show such equity as would require the deed to be reformed.

"Plaintiffs also offer to show that the corner as fixed by Esquire Marshall is as much in the centre of the road as the stone claimed by Peter Peters."

The court rejected the offer and sealed a bill of exceptions for the plaintiffs.

The jury, under the instructions of the court, found a verdict for the defendant.

The plaintiffs took a writ of error and assigned for error:—

1-4. The rejection of their offers of evidence.

5. The instruction of the court.

*J. M. Linn* (with whom was *A. H. Dill*), for plaintiffs in error.—Parol evidence is admissible to explain ambiguities in a deed, to prevent fraud and correct mistakes: Chalfant *v.* Williams, 11 Casey 212; Rearich *v.* Swinehart, 1 Jones 238; Woods *v.* Wallace, 10 Harris 175; Hurst *v.* Kirkbride, cited in Wallace *v.* Baker, 1 Binn. 614; Dinkle *v.* Marshall, 3 Id. 587.

*F. Bound* (with whom was *W. C. Lawson*), for defendants in error.—The calls will extend the boundaries to them, although the lines described in the deed may not reach: Caldwell *v.* Holler, 4 Wright 160; Thompson *v.* McFarland, 6 Barr 478; Blaisdell *v.* Bissell, 6 Barr 259.

Mr. Justice PAXSON delivered the opinion of the court, March 13th 1876.

The English rule that parol evidence is inadmissible to vary the terms of a written instrument does not exist in this state. A number of authorities settle the doctrine that in cases of fraud or mistake as to material facts, parol evidence of what occurred at the execution of the writing is competent to explain the real meaning of the parties. As was said by Justice Woodward in Chalfant v. Williams, 11 Casey 212 : " We permit a deed absolute on its face to be proved a mortgage ; we receive parol evidence to rebut a presumption or an equity ; to supply deficiencies in the written agreement ; to explain ambiguities in the subject-matter of writings ; to prevent fraud, and to correct mistakes." To the same point are Dinkle v. Marshall, 3 Binn. 587 ; Woods v. Wallace, 10 Harris 171 ; Bank v. Fordyce, 9 Barr 279 ; Rearich v. Swinehart, 1 Jones 233 ; Barnhart v. Riddle, 5 Casey 92 ; Musselman v. Stoner, 7 Casey 270. Was there such a mistake in the deed from the plaintiff to Abraham Dersham as would justify the admission of parol evidence to reform it ? This is the important question raised by this record. The plaintiff offered to prove that she refused to sign the deed prepared by James Marshall ; that, after some negotiation, she agreed to give her vendee ten feet more land than was embraced in the survey and deed prepared by Esquire Candor ; that the ten feet additional land was then measured off, and the line marked upon the ground ; that upon the erasure of the words " more or less," she signed the deed, and that the defendant was present during the negotiation, and accompanied the parties to mark off the ten feet. It is urged that this offer was properly rejected, for the reason that the calls in the deed as executed, were for John Bitting's corner on the southwest, and the middle of the road near Peter Peters's corner on the southeast, which were recognised landmarks, and easily found. But the evidence offered was evidently for the purpose of showing that the plaintiff refused to sign the deed for the reason that, by its calls, the lines were extended in this direction beyond the lines of the Candor survey, and that, as a concession, she agreed to measure off the ten feet additional. Assuming the facts to be as stated, it is highly probable that when the words " more or less " were erased, the fact was overlooked that the deed called for the Bitting corner. We think it was clearly competent to show the tract of land as designated by the monuments on the ground, and that there was a mistake or misapprehension on the part of the plaintiff in signing the deed with the call for the Bitting corner. Nor would the fact that the deed was read over to her affect her right to have it reformed, if, in point of fact, a mistake had been made. Such fact might have weight with the jury. All we decide now is, that

[Kostenbader *v.* Peters.]

the evidence should have been submitted to them for their consideration. This disposes of the first assignment.

From what has been said, it will be apparent that the evidence referred to in the second, third and fourth assignments ought to have been received.

The plaintiff is entitled to have this judgment reversed. Whether it will avail her in view of her own distinct evidence that the defendant was in possession of the *locus in quo* at the time of the commission of the alleged trespass, is more than questionable.

Judgment reversed.