CHRISTIANNA ANDERSON ET AL. v. JONAS
BRINSER.

APPEALS BY DEFENDANT FROM THE COURT OF COMMON PLEAS
OF DAUPHIN COUNTY..

Argued May 30, 1887—Decided January 3, 1888.
Argued June 4, 1889—Decided October 7, 1889.
[To be reported.]

1. To establish a parol contract for the sale of lands, effective since the
statute of frauds, the testimony must be such as to show, by full, complete, satisfactory and indubitable proof, the existence of the contract
and its terms, defining the boundaries of the land sold and the consideration of the sale.

2. It is also requisite, to take such a contract out of the statute, that exclusive and notorious possession be taken under it, and maintained continuously; and the contract must be so far in part performed that
compensation in damages would be inadequate, and rescission inequitable and unjust.

3. A receipt from S. to A. for $40 " in part of the purchase money of lot
No. 258 in the borough of M.," with evidence that about its date S. sold
the lot to A. by parol for $300, in such payments as A. could make,
that A. built a house thereon, maintained open possession for many
years, and paid the most if not all the purchase money, satisfies the
requirements of the rule.

4. It is incumbent upon one claiming land under a parol contract by which
one of several owners of land, in behalf of all, is alleged to have sold
it, to establish not only the requisites referred to in relation to the contract itself, but also the authority of the vendor to represent the other
owners in the making of it.

5. The acceptance by an equitable vendee of a lease of the land from a
holder of the legal title, is evidence of an abandonment of his equity proper for consideration, but it is not conclusive between the parties, nor
operative against a vendee in possession as an estoppel in favor of a
third person purchasing with a knowledge of the lease.

6. Knowledge of the existence of a lease will not relieve one dealing with
the lessor from the duty of inquiring of the person in possession
whether he claims otherwise than under the lease, the possession, apart
from the lease, being notice of the possessor's claim of title, whatever
that may be; the dictum to the contrary of Mr. Justice THOMPSON in
Leach v. Ansbacher, 55 Pa. 85, disapproved.

7. This ruling is especially applicable in a case like the present, wher
the lessee was dead, the term expired, and the lessee's widow and chi

dren in possession of the property at the time of its purchase by the person setting up the lease as an estoppel, as it was not to be presumed in his favor that the occupants were holding over under the lease.

Before GORDON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

No. 12 May Term 1887, Sup. Ct.; court below, No. 258 August Term 1885, C. P.

On June 18, 1885, Christianna Anderson et al. brought ejectment against Jonas Brinser for lot No. 258 in the town of Portsmouth, now known as the borough of Middletown. The defendant's plea was not guilty.

At the trial on January 17, 1887, both the plaintiffs and the defendant claimed title under John Snyder, who died prior to 1857, seised of the lot in controversy, leaving as his heirs at law several children among whom was Washington R. Snyder.

For the purpose of showing that the title of Snyder's heirs had become vested in John Anderson, whose heirs the plaintiffs were and through whom they claimed, the plaintiffs called Margaret Snyder, who testified that she was the widow of Washington R. Snyder, now deceased; that in 1857, in the presence of the witness, her husband, Washington R. Snyder, on behalf of himself and the other heirs of John Snyder, deceased, made a parol contract with John Anderson by which the latter purchased the lot in controversy for the price of $300, to be paid in such instalments as he should be able to pay; that at the time of making this contract Anderson paid to the husband of the witness $40, on account of the purchase money, and her husband subsequently told the witness that he had received from Anderson $150, in all, under the contract. The witness also identified the signature of her husband to a receipt which was read in evidence, as follows:

"Rec'd, Middletown, October 22d, 1857, from John Anderson, forty dollars, in part of the Purchase Money for Lot No. 258, in the Borough of Middletown.

"$40. WASHINGTON R. SNYDER, Ag't."

No evidence of any authority in Washington R. Snyder to represent the other heirs of John Snyder in making this sale, was presented.

Several witnesses testified for the plaintiffs that John An-

derson took possession of the lot so purchased, erected thereon a house soon after its purchase, and subsequently added a kitchen to the house; that for about three years after it was built, this house was in the occupancy of a tenant of Anderson; but about the spring of 1861 he moved into it himself and continued to reside therein until his death in 1883. His widow and two of his heirs continued to live in it after his death, until ejected under a recovery in an action of ejectment brought against them in 1884 by Jonas Brinser.

The plaintiffs having rested, the defendant put in evidence a deed from the heirs of John Snyder, deceased, executed November 22, 1858, conveying to J. H. Hershey the lot in controversy, in consideration of $150. The defendant then called Peter Helman, one of the subscribing witnesses to a paper dated December 30, 1875, and purporting to be signed by J. H. Hershey and John Anderson. The witness testified that this paper was executed by both Hershey and Anderson in his presence. The paper, so proved, being put in evidence by the defendant, appeared to be a demise from J. H. Hershey to John Anderson of the lot No. 258 in the borough of Middletown, in the occupancy of said Anderson, upon terms specified in the instrument as follows: "To have and to hold the said premises monthly, if the said John Anderson shall prove himself satisfactory to the said J. Hoffman Hershey, and if not, the said J. Hoffman Hershey hereby reserves the right to remove the said John Anderson and family, with his goods, from the house and premises, as a tenant at will, at any time during said term. The said John Anderson, hereby promising and agreeing to pay as rent, for each month in advance, the sum of two dollars, commencing on April 1, 1876, upon the conditions aforesaid, and also pay all taxes assessed on said property during the occupancy of the same. The said John Anderson agrees also to do such labor or work (at the customary wages) as the said J. Hoffman Hershey shall direct him to do. He shall suffer no damages to be done whilst occupying said premises, nor do any himself, but agreeing peaceably, at any time, as hereinbefore reserved, to yield up the premises to the said J. Hoffman Hershey, or his agent," etc.

David Detweiler, called by the defendant testified that during the years 1878–1880 the witness, as the agent of J. H.

Hershey, occasionally collected from John Anderson rent for the premises in controversy, and that after Anderson's death his son George paid some rent to the witness; that at the end of every year the witness gave Anderson notice to quit, but he and his heirs were allowed to stay on; "they came and re-rented:" that on one occasion John Anderson spoke to the witness about having been to see Hershey in regard to buying the property in the way of paying rent. J. H. Hershey testified for defendant that John Anderson often wanted to buy the property from the witness, to pay for it in monthly instalments; that the property was purchased by the witness from the Snyder heirs, at the instance of Anderson, so that Anderson could keep it at a cheap rent, and if ever he should be able to buy it, the witness intended to let Anderson have it at cost, with a fair interest; that $150 was all that the witness paid for the property; that he did not know at that time that Anderson had built the house on it; that after purchasing, the witness rented it to Anderson at $3 a month, but subsequently made the lease in evidence at the rate of $2 a month, and he was unable to tell how much was back on the rent. The defendant put in evidence also the deed of J. H. Hershey and wife, dated August 19, 1884, conveying the lot in controversy to Jonas Brinser. There was no evidence that Brinser, at the time he purchased, knew anything of the lease between Hershey and Anderson in evidence, or that he made any inquiry, or had any information, respecting the capacity in which Anderson and his heirs had been in the possession of the property.

In rebuttal, the plaintiffs presented evidence tending to prove that John Anderson could not write and could not have signed the lease; and that J. H. Hershey had at different times admitted Anderson's ownership of the lot in controversy, had admitted to Anderson in his lifetime the loaning to him of $150 to pay for the lot, to be repaid in rent, and after his death had admitted to some of the plaintiffs that the purchase money he had paid to the Snyders was advanced for Anderson as a loan, and promised to inform them to what extent the moneys so advanced had not been repaid to him, and to permit the plaintiffs to pay it in instalments, but had failed to inform them as to the amount due.

In sur-rebuttal the defendant presented testimony tending

Charge of Court below.

to disprove the statements made by the plaintiffs' witnesses in rebuttal, and to prove that after the death of John Anderson the plaintiffs endeavored to buy the property from Hershey.

At the conclusion of the evidence the court, SIMONTON, P. J., charged the jury as follows :

This is an action of ejectment, brought by the heirs of one John Anderson against Jonas Brinser and others, to recover possession of a certain lot in the town of Middletown, or what was originally the town of Portsmouth.  The claim of the plaintiffs, which stands exactly on the same footing as it would stand if John Anderson, who is dead, were here and bringing the action, is that John Anderson, in 1857. the time is not very definitely fixed, purchased this lot from the heirs of one Snyder ; that Anderson, after purchasing it, went into possession of the lot which at that time was a vacant lot, and built a small house upon it ; that Anderson remained in possession of it until his death, about 1883, and died while in possession, leaving the present plaintiffs as his heirs.

On the part of the defendant, it is claimed that he holds a regular deed for this property, which was conveyed to him by one Hershey, and that Hershey received a regular deed, in 1858, I believe, from the same persons from whom the plaintiffs claim that Anderson bought, viz. : the Snyder heirs.   The title of the defendant is regular upon its face.  He has a deed which upon the face of the papers is regular and legal, conveying to him a regular title from the Snyder heirs, and it is agreed on both sides, that the Snyder heirs had a good title. But the plaintiffs say that before the Snyder deed was made to Hershey, who afterwards conveyed to Brinser, the Snyders had already sold the property to Anderson.   They have no deed to show for this sale.   If they had a deed regularly executed by the heirs of Snyder, that was made in 1857, while the deed of Hershey was made in 1858, they would have a good title, and the fact that a second deed was made, would not affect it at all. They have no deed, however, but they claim that they made the purchase by parol, as it is called in the law ; that is to say, by word of mouth, and without any writing or deed.

There is a law in this state, as in most other states, in English speaking countries at least, that an interest in real estate,

except for three years or less, cannot be conveyed except in writing, signed by the parties conveying the land. That is the general rule, and if there were no exceptions to that rule there would be an end to this case at once. The plaintiffs in this case would have no title because they have no deed or writing, and the claim here is not for a lease for three years or under, but an absolute fee simple of the land. That law is called the statute of frauds and perjuries, and it was passed for the purpose of preventing fraud and perjury by allowing persons to claim that they had purchased land by word of mouth or parol. But it was found by experience that persons did sometimes make these conveyances without writing, and therefore there have been exceptions established by the courts to that unbending rule, and there are times in which a man can get a title to land for a greater term than a lease for three years by parol agreement; and it is sufficient in this case to say that persons may do so, and that where a person, having made a contract by parol, purchases land, and goes into possession of the land purchased, and makes valuable improvements upon it, or, to confine it still further to this case, where a person goes into possession and builds a house upon the property which he purchased by parol, it is, by law, sufficient to take the case out of the statute. But in order to establish it there must be clear proof of certain matters. In the first place there must be proof that the contract was made, and there must be clear and definite proof as to the subject matter of the contract; that is to say, there must be proof of what land it was that was purchased; there must be proof to satisfy a jury clearly as to what the consideration was, and there must be proof to satisfy a jury of the fact that the person who claims to have purchased went into possession of the property under and because of the contract. It is contended on the part of the plaintiff that there is not such proof in this case, and that is the first question you are to determine. You are to determine whether in this case there was a parol contract, which you understand to be a contract without writing, by word of mouth, between John Anderson and the Snyders, to purchase this property; that is to say, to purchase the very lot upon which the house about which you have heard was built; because if it was a contract for any other lot it is of no conse-

quence here.   If you have no evidence to satisfy you definitely that it was in respect to this lot, the plaintiffs fail.

The evidence upon that point is contained, first, in the testimony of Mrs. Snyder, and you heard what she said as to bargaining between her husband and John Anderson.   She speaks of hearing them contracting about the purchase of a lot.   She could not give the number of the lot.   She spoke of the price being $300.   You will have to remember and determine how far she made that statement from her own knowledge, or how far she made it, if she did, simply from hearing her husband speak of it afterwards.   The testimony was not very definite upon that point, but she did testify to the fact that the price was to be $300.   She testified also as to payments made—one payment she spoke of quite definitely; she spoke of payments being made at other times on account of the purchase; she said, if we remember rightly, that at the other times she did not hear them say that the money was paid on this particular lot. You will have to determine whether or not Anderson, when he paid money from time to time, paid it on account of this purchase.   She did not know the amount of the payments at the different times with any great definiteness.   She did say that in all $150 had been paid.   You will have to determine whether she testified to that from her own knowledge, or from her husband saying so.

In addition to this testimony there is this receipt.   In this receipt the lot is designated, and that is the equivalent to a description of the property, because in the absence of any other evidence in the case we have a right to assume that the lots in Middletown are designated by numbers, and that this description, number 258, in the borough of Middletown, designates the lot.   If this receipt refers to the payment for the same property that Mrs. Snyder testified about, or if her testimony refers to the same property that this receipt does, then the lot is sufciently designated and described to make complete the subject matter of the purchase and to show that the lot purchased, if one was purchased, was lot number 258, and we believe the testimony is that that was the lot upon which the house was built.   Then, again, you determine with definiteness and certainty what the price was to be for this lot; and a good reason why the jury should be able to find, and why the plaintiffs

should satisfy the jury by testimony from which they can find, what the price of the lot was, is because it would not be fair and equitable to allow the plaintiffs to recover unless they have paid the purchase money, and the jury cannot compel the payment of the purchase money unless they know what it was; therefore it is right and proper that the law should be as it is, that the plaintiffs shall satisfy the jury what the price was.

Then, again, if you find that there was a purchase of a definite lot, and if you can find what the price was from clear and satisfactory evidence, you are to determine next, was possession taken of that lot by virtue of this purchase? Was it because John Anderson purchased this lot, and because it was agreed to be sold to him by the owners, that he went into possession; was that the way he got possession, if he did take possession of it? If he did, did he build this house upon it? If all these matters are found satisfactorily; if you can find that a definite contract was made for the purchase of a definite lot, the identity of which you can ascertain; that the price was fixed; that possession was taken by virtue of that contract; that the house as described by two carpenters was built upon it by Anderson and paid for by him, and that the taxes were paid upon the property by Anderson, or even without that, for the present purpose, then he would get such a title by parol as would take the case out of the statute of frauds, and he would get such a title as would be equivalent to a written deed. The statute of frauds, under these circumstances, would not stand in the way of his title. The fact that he did not get a deed would not prevent the title from passing to him, and if the title did thus pass to him, then the Snyder heirs would have no title to convey to Hershey, and Hershey's deed would not be good against the title so acquired. But there is other evidence in the case.

As you have heard here, there is evidence to show that some years afterwards Anderson went to Hershey and asked him to buy this property, or to get a deed for this property from the Snyders, and that Hershey did go, and he got this deed that has been offered in evidence here. It was one year afterwards, in 1858. The deed was then made by the Snyders to Hershey, and the consideration of that deed, as it has been read here, was

Charge of Court below.

$150. Some years after that deed was taken by Hershey a lease was taken and entered into by Anderson, in which he rented this property from Hershey. It has been contended upon the part of the plaintiffs that there is something irregular about that lease. They gave some evidence, as you heard, to show that Anderson could not write his name, whereas, it is written on that lease. There has been no evidence, as the counsel avers, that the lease was not read to Anderson or explained to him. That is of no consequence, gentlemen; there is nothing to show that it was not read to him or explained, and therefore we must assume that it was so read and explained to him. And it is contended that the fact that Anderson gave this lease; the fact that by that writing he rented this property from Hershey, shows that he was not the owner of it and estops him now from claiming to be the owner, and we are asked, as a matter of law, to instruct you that that is so. This we do not think we can do, and we leave the question to you to determine, upon all the evidence of the case, what the intention of the parties was in executing that lease; to determine whether the object of it was, as it would appear upon its face, in the absence of any other facts and circumstances in evidence, that Anderson was to become the lessor of Hershey for the lot to which he otherwise had no title?

There is no controversy but that when Hershey bought, there was $150 due by Anderson, if he became the purchaser. Hershey was entitled to get this from Anderson. Did he buy it for the purpose of giving Anderson time, or of enabling Anderson to get the title finally by paying off this $150? Was the lease made by Hershey so that Hershey might be in a position to inforce the payment of the interest and principal of that $150 from time to time? If Anderson, in making this lease, and if Hershey in taking the lease, did not intend that Anderson was acknowledging that he had no title to the property, but it was for the purpose of carrying out that arrangement, and of securing the payment of the $150, the giving of the lease would not, as a pure matter of law, prevent Anderson, or his heirs, from setting up a claim of title, and we leave to you to determine what his intention was, from all the facts in the case, in the giving of the lease.

[Brinser, this defendant, stands just where Hershey did. He has no greater rights, nor no less. Anderson was in posses-

sion of the property, or Anderson's heirs were, after the death of Anderson, and that was notice to Brinser of the facts, and he could get no less or no greater title than Hershey had. He stands precisely in Hershey's shoes.] [2]

[If you find by satisfactory evidence that the parol contract was made for the purchase of this lot No. 258; if you find what the amount of the purchase was, what the bargain was; if you find by testimony of the same kind that in pursuance of that Anderson went into possession, built a house and paid for it; if you find these facts, then, unless this lease was a change of that condition, or was an agreement on Anderson's part that Hershey had become the legal owner, and that Anderson was only the lessor, you find a verdict in favor of the plaintiffs.] [3] And if you find a verdict for the plaintiffs, you will have to find whether the $150 due at the time that Hershey bought, was afterwards paid. If, up to this point, you find a verdict in favor of the plaintiffs, then whatever money Anderson paid to Hershey would be, in law, a payment upon the $150 of purchase money, and the interest due upon it; that is, if you find the lease did not change their legal relations. If you find that after the time that Hershey purchased, Anderson paid enough to make up the $150, with interest, then you will simply find a verdict in favor of the plaintiffs. If you find he did not pay it all, it will be your duty to find how much he did pay, and if a balance is due, it will be your duty, by your verdict, to say how much that balance is. If you find that all the $150 was paid, you simply find a verdict for the plaintiffs; but if you find for the plaintiffs, and that all the $150 was not paid, then you find for the plaintiffs and the amount that was paid.

If you find, gentlemen, that this lease did change the legal relations of these parties, or if you find that it proves that Anderson, from the time Hershey claimed to own it, knew that he had no title to it, and that he knew that Hershey had a full title, then, of course, your verdict would have to be for the defendant. If Anderson was only a tenant; if he had no title or had given it up, and was simply a renter, then your verdict would have to be in favor of the defendant.

The defendant requests the court to charge the jury:

1. The fact that Anderson took this lease, the fact that by that writing he rented this property from Hershey, shows that

he was not the owner of it, and estops him now from claiming to be the owner.

Answer: This we do not think we can do, and we leave the question to you to determine, upon all the evidence in the case, what the intention of the parties was in executing that lease; to determine whether the object of it was, as it appears from its face, in the absence of any other facts and circumstances in evidence, that Anderson was to become the lessor of Hershey for the lot which he otherwise had no title to.[1]

Now gentlemen, I will call your attention to the reserved points. I have put the points this way: " It is agreed by counsel on both sides that if the jury find a verdict in favor of the plaintiffs, and the court should, on the motion for the entry of judgment for defendant non obstante veredicto, be of the opinion that the evidence of a parol purchase is not sufficient to take the case out of the statute of frauds, the judgment shall be entered for the defendant. It is further agreed that if, on the said motion, the court should be of the opinion that the existence of the lease is a legal bar to the recovery of plaintiffs, then judgment to be entered for defendant non obstante veredicto."

This statement of these points makes them an agreement of counsel, on both sides, that the case may be disposed of in that way.

The jury rendered a verdict in favor of the plaintiffs for the premises in dispute, subject to the opinion of the court upon the points reserved. On January 27, 1887, without opinion filed, the court entered judgment upon the verdict in favor of the plaintiffs.[5] Thereupon the defendant took this writ, assigning for error:

1. The answer to defendant's point.[1]

2, 3. The parts of the charge embraced in [ ][2][3]

4. That the judgment which was intended to be a judgment upon the reserved points, contained nothing to indicate its grounds, nor the facts upon which it was based.

5. The entry of judgment, for the plaintiffs on the reserved points.[5]

*Mr. A. J. Herr* and *Mr. J. C. McAlarney* for the plaintiff in error:

Arguments.

1. The court erred in submitting to the jury whether the lease was an agreement to pay purchase money in the form of rent. There was not a scintilla of evidence that it was anything else than what it purported to be. The mere suggestion of counsel that it might be an agreement for the payment of purchase money, seems to have been adopted by the court without anything to warrant it. To submit a fact without evidence is error: Stauffer v. Latshaw, 2 W. 167; Bradley v. Grosh, 8 Pa. 49. Neither fraud, accident nor mistake was proved, or even alleged, and parol evidence was inadmissible to vary the written lease: Martin v. Berens, 67 Pa. 463; Eargood's Est., 1 Pears. 399 and cases cited.

2. Moreover, the lease was in the nature of an estoppel as to Brinser, who was an innocent purchaser. When a party is in possession under a lease, knowledge of the lease dispenses with further inquiry as to the character of the possession: Leach v. Ansbacher, 55 Pa. 85. If invalid, its invalidity depends on what took place when it was made, and of this Brinser should have been shown to have knowledge when he bought: Dinkle v. Marshall, 3 Binn. 589; Kostenbader v. Peters, 80 Pa. 441; United States v. Mertz, 2 W. 407. This ground alone was sufficient to require binding instructions for the defendant: Hood v. Fahnestock, 1 Pa. 470; Wilson v. McCullough, 23 Pa. 440; Sartwell v. Wilcox, 20 Pa. 123.

3. The parol contract under which the plaintiffs claim, was not sufficiently proved. The amount and time of payment of the purchase money were not definitely stated. A parol contract should be definite in its terms and unequivocally established: Goucher v. Martin, 9 W. 106. There is no evidence that John Anderson took possession in consequence of the contract. His building a small house can be compensated in damages: Postlethwait v. Frease, 31 Pa. 474; McKowen v. McDonald, 43 Pa. 441. If he ever had an equity, he abandoned it by his neglect to assert it and his recognition of Hershey as his landlord. Moreover the judgment on the reserved questions was erroneous: Ferguson v. Wright, 61 Pa. 258; Central Bank v. Early, 113 Pa. 477; Wilde v. Trainor, 59 Pa. 439.

*Mr. S. J. M. McCarrell* (with him *Mr. H. S. Nissley* and *Mr. David Fleming*), for the defendants in error:

There are but two questions raised by the record, viz.: (1) Was the evidence of a parol purchase of the lot in controversy by John Anderson, sufficient to take the case out of the statute of frauds? and (2) Was the alleged lease a legal bar to the recovery of the plaintiffs?

1. Upon the first question there is no ground for controversy. The testimony as to Anderson's purchase, payment of purchase money, possession and improvements, was remarkably clear, considering the great lapse of time which had intervened. Had it been much less clear, distinct and positive, the court would have been bound to submit it to the jury: Richards v. Elwell, 48 Pa. 367; Milliken v. Dravo, 67 Pa. 233. Many cases of like import might be cited.

2. The law is equally well settled upon the second question. A lease does not under all circumstances estop the lessee from claiming title. The real arrangement intended to be made can always be inquired into. All the circumstances show that the deed from the Snyder heirs to Hershey was a mere mortgage to secure the repayment of the money advanced by him for Anderson. The lease, if ever made by Anderson, was not inconsistent with Hershey's holding the title in this manner: Kunkle v. Wolfersberger, 6 W. 126.

3. It is claimed that Brinser was relieved by the alleged lease from making inquiries of the parties in possession, and that its true purpose cannot be shown as against him. No such question is fairly raised by the record. It was not proved or pretended that he had seen or knew anything of the lease. But the case of Leach v. Ansbacher, 55 Pa. 85, does not sustain the position of the defendant. The remark of Mr. Justice THOMPSON as to knowledge of the lease dispensing with inquiry was a dictum, unnecessary to the decision.

4. The authorities cited by Justice THOMPSON, in Leach v. Ansbacher, do not sustain his remark. Neither Hood v. Fahnestock, 1 Pa. 474, nor Sugden on Vendors, is to the point. Besides, Sugden's doctrine is not approved in Pennsylvania: Billington v. Welsh, 5 Binn. 134. Possession of a tenant is notice not only of his interest under the lease, but also of a subsequently acquired title: Jaques v. Weeks, 7 W. 276; Hottenstein v. Lerch, 104 Pa. 460. It was Brinser's duty to make inquiry of the parties in possession, and having failed to do so he cannot complain: Jamison v. Dimock, 95 Pa. 52.

OPINION, Mr. JUSTICE CLARK:

It is agreed that John Snyder owned and died seised of the premises in dispute. Both parties rely on this common source of title. The plaintiffs, on the one hand, are the heirs at law of John Anderson, deceased, who they allege, in his lifetime, in the year 1857, purchased the premises under a parol contract from the heirs of John Snyder, then deceased; and their claim is, that this parol contract has been so far in part executed as to render it unjust and inequitable to rescind the same. The defendant, on the other hand, claims under a regularly executed conveyance from the heirs of Snyder to J. Hoffman Hershey, dated November 22, 1858, and under a deed from Hershey to him, dated August 19, 1884: he denies that any such parol sale was made, and that if it had been, the defendant purchased without notice of it; and further, that if any such equitable right or title ever existed, it was subsequently abandoned and nullified, by an agreement to take the premises under a lease at a certain yearly rent.

The first question arising in the case, therefore, is, whether or not, if the evidence is believed, a parol contract has been established by sufficient proof, and enough shown to take the case out of the statute of frauds. This was a question of law for the court below, and is for our consideration here : Overmeyer v. Koerner, 81* Pa. 517.

To establish a parol contract for the sale of land, and take it out of the statute, the existence of the contract and its terms must be shown by full, complete, satisfactory and indubitable proof; the evidence must define the boundaries and fix the consideration; exclusive and notorious possession must have been taken under it, and continuously maintained, and the contract must have been so far in part performed, that compensation in damages would be inadequate, and rescission inequitable and unjust: Hart v. Carroll, 85 Pa. 508. In Jamison v. Dimock, 95 Pa. 52, it was held, however, that in the case of a parol sale for a money consideration, fully paid according to the contract, where the possession was taken and continuously held in pursuance thereof, it is not essential that the improvements should be such as could not be compensated in damages; that the equities of the vendee might rest upon other equally available grounds.

In the case at bar, the parol agreement is alleged to have been made by Washington R. Snyder, one of the heirs, in his own behalf and "representing" the remaining heirs of John Snyder, deceased. Who the remaining heirs were does not distinctly appear in the proofs. The defendant read in evidence the deed to J. Howard Hershey, purporting to be from the heirs and legal representatives of John Snyder deceased, and from the note made of it in the evidence, it would seem that he left at least four children and heirs viz.: Washington R. Snyder, Maria intermarried with Christian Fisher, Sarah intermarried with John Winagle, and Catharine intermarried with one Snavely; whether or not there were any others does not appear.

It is undoubtedly true, that there was a contract for the sale of this lot by Washington R. Snyder to John Anderson, made in the year 1857; the receipt, dated October 22, 1857, taken with the other evidence in the cause, is full and complete on this point. The terms of the contract are, we think, sufficiently shown. The lot is described as No. 258 in the borough of Middletown, which may be regarded perhaps as a proper designation of the boundaries; the consideration was $300, a considerable part of which, if not all, was shown to have been paid; possession was taken immediately after and in pursuance of the purchase, and a dwelling house was erected upon it; the possession was open and notorious, and was continuously maintained for many years, and until legal proceedings were instituted to test the title. But how and by what authority did Washington R. Snyder represent his sisters, in the sale ? Was he their attorney in fact, regularly constituted, or was he their agent by parol merely ? Is there proof that he had authority of any kind or character from them ? He might perhaps enter into a parol contract in respect of his own interest, but how could he without authority bind his sisters ? They were not present; they do not appear to have participated in the sale, or to have approved it after it was made; it does not appear that they received any portion of the purchase money, or indeed that they ever knew any such contract was made, at least until after their conveyance to Hershey. We are not to presume that Washington R. Snyder had power to sell his sisters' shares, simply because he assumed to have it, and if he had not the power, his contract to that effect was of no validity what-

ever as to them; it was just as if it had never been made, and there is not the slightest proof that any such power existed.

The transaction in question occurred nearly thirty years ago, during nearly all which time the plaintiffs had been in possession under claim of title. It cannot be expected, perhaps, after this great lapse of time, that the proof should be as precise as if it related to a recent occurrence, but a person purchasing real property knows, or ought to know, that the law requires the evidence of his title to be in writing; the burden of proof is therefore upon him; the delay, as in this case, is frequently his own fault, and this stringent but statutory rule of evidence will not generally be relaxed in his favor. It was incumbent, therefore, upon the plaintiffs, not only to establish the existence of a contract made by Washington R. Snyder, and the terms of that contract, but also his authority for making the same.

But, assuming that, in the re-trial of this case, proof may be made of the authority of Washington R. Snyder, to "represent" his sisters in the sale, we come next to consider the question as to the effect of the written agreement, made between Hershey and Anderson on December 30, 1875. It is contended, on part of the defendant, that this writing was an abandonment of any equity Anderson may have acquired under the parol purchase alleged, and that he and his heirs are thereby estopped from claiming any title to the lot. The lease was undoubtedly evidence of abandonment, and was, with all the other evidence in the cause, for the consideration of the jury, but it cannot be set up as an estoppel. Hershey was the holder of the legal title; Anderson had for eighteen years made default in the payment of the purchase money, and it was Hershey's clear right by an equitable ejectment, at any time to rescind the contract and recover the possession. But he might contract, in the form of a lease or otherwise, with the defaulting vendee for the continuance of his possession, for fixed periods of time, on terms agreed upon, the rent to be applied to the interest or principal of the purchase money. Abandonment includes both the intention to abandon, and the external act by which that intention is carried into effect; intent is of the essence of the act, and therefore the facts are in each particular case for the judge: Clemmins v. Gottshall, 4 Y. 330;

Atchison v. McCulloch, 5 W. 13; Heath v. Biddle, 9 Pa. 273; Kunkle v. Wolfersberger, 6 W. 126. Very similar to this is the case last cited. There the owner of an equity of redemption executed a lease of the mortgaged premises to the mortgagee, covenanting to pay to him an annual rent of $24, together with the taxes and repairs. It was argued in that case, as it is in this, on the one hand, that the acceptance of the lease was a relinquishment of the equity; on the other hand, it was contended that the lease was only a mode adopted for securing the possession for a definite time, and providing for the interest, in the form of rent, and that whether it was or not was for the jury. Chief Justice GIBSON, delivering the opinion of the court, said: "The only original thing in the cause, and it is not of difficult solution, is the effect of the lease from one of the defendants to the grantor, under whose title the plaintiff claims, which is said to be a decisive circumstance, either to rebut the alleged mortgage originally, or to dissolve the relation created by it, if it ever existed; and that is a matter of law for the court. But why should the relation of landlord and tenant be thought inconsistent with that of mortgagor and mortgagee. Without it, a mortgagor is an occupant liable to be turned out at a moment's warning; and it is hard to imagine why a stipulation for a certain term, at a rent equivalent to the interest, may not be reconciled to the intention of the principal contract."

If a lease under such circumstances was not inconsistent with the relation between mortgagor and mortgagee, we cannot see how it could be supposed to be inconsistent, under like circumstances, with the relation of vendor and vendee. We think the court was right, therefore, in submitting to the jury, "whether Hershey took the deed from the Snyders in the interest of Anderson, and to enable Anderson, by paying the $150 on the footing of the lease, to obtain title to the lot." "If Anderson in making this lease," says the learned court, "and Hershey in taking the lease, did not intend that Anderson was acknowledging that he had no title to the property, but it was for the purpose of carrying out that arrangement and of securing the payment of the $150, the giving of the lease would not, as a pure matter of law, prevent Anderson, or his heirs, from setting up a claim of title; and we leave to you

to determine what his intention was, from all the facts in the case, in the giving of the lease." There was evidence in the cause from which the jury might well find that Anderson did not intend by the execution of the lease to abandon his title. He seems to have regarded the deed to Hershey as collateral security for the $150 which Hershey advanced in discharge of the purchase money; and Hershey himself, if the testimony of George Anderson and Amanda Harley is believed, regarded the $150 as a loan to Anderson for the purpose stated. Upon the evidence of these witnesses, although there was certainly much countervailing proof, the court could not do otherwise than submit the question to the jury.

But it is said that Brinser was a bona fide purchaser without notice of any equity in Anderson, and therefore his title is not affected by it. This would seem to be true, unless by the possession of Anderson, Brinser was put upon inquiry as to the title under which the possession was maintained. Anderson was at the time in possession, under the terms of the paper which has been denominated a lease, and if Brinser had actual knowledge of the lease, and had no knowledge of the facts relating to its execution, it is probable, under the ruling of this court in Leach v. Ansbacher, 55 Pa. 85, he might be regarded as an innocent purchaser. " Nothing in the transaction," says Mr. Justice THOMPSON, in the case cited, " gave the least sign to put the purchaser on inquiry. The possession will, it is admitted; but when the party is in possession under a lease, the knowledge of the lease dispenses with the inquiry of how the possession is held. That knowledge the agent had, and of the very terms of the lease. That was enough for him; he was not bound to inquire of the tenant in possession if the lease was fair or fraudulent, or whether there was a trust notwithstanding: Sugden on Vendors, 339; Hood v. Fahnestock, 1 Pa. 474." But there is not the slightest evidence in this case that Brinser knew of the lease, and we are not to assume a fact that has not been proven. If he had no knowledge of the lease, then, plainly, the possession put him upon inquiry as to the ground of that possession, and he is chargeable constructively with the knowledge of every fact which due and proper inquiry would have brought to light: Leonard's App., 94 Pa.

168. The possession of Anderson was notice of the title un der which that possession was maintained.

> Judgment reversed and a venire facias de novo awarded.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM, and MITCHELL, JJ.

No. 13 May Term 1889, Sup. Ct.; court below, No. 258 August Term 1885, C. P.

On August 31, 1888, the record of the foregoing cause, with a remittitur certifying the judgment pronounced by the Supreme Court therein, was filed in the court below.

At the second trial on October 2, 1888, the plaintiffs presented evidence substantially to the same effect as that adduced by them upon the former trial, and, in addition, the following testimony respecting the authority of Washington R. Snyder to represent the other heirs of John Snyder, deceased, in making the sale to John Anderson: Margaret Snyder, the widow of said Washington R., testified that the heirs of John Snyder were four in number, viz.: Washington R. Snyder, Mrs. Fisher, Mrs. Winagle and Mrs. Snavely; that after the administrator of John Snyder had settled his account, the three daughters of the decedent verbally authorized their brother, Washington R., to sell the lots remaining unsold, among which was lot No. 258, which Washington R. sold to Anderson, in pursuance of this authority, for $300. Mrs. Winagle testified that she and her sisters had given Washington R. authority to sell their interests in the lots belonging to their father's estate; that he had paid her her share of the purchase money of the lot sold by him to Anderson, and had offered her sisters their shares; that her sisters, as well as her brother Washington R., were since deceased. Christian Fisher, the surviving husband of Mrs. Fisher, one of the heirs of John Snyder, testified that Washington R. Snyder represented the wife of the witness in making the sale to John Anderson, and paid Mrs. Fisher her share of the proceeds.

The defendant, in addition to substantially the same testimony that he had presented on the former trial, adduced testimony that Brinser, before purchasing the title of Hershey,

was shown by the agent of the latter the lease of December 30, 1875, from Hershey to Anderson, and read it and knew its contents; that, in accordance with the provisions of said lease, Anderson regularly paid the taxes upon the property; that these were levied in the name of Hershey, and Anderson took the receipts therefor in Hershey's name.

At the conclusion of the testimony the court, SIMONTON, P. J., instructed the jury in part as follows, the omitted portions of the charge being chiefly a repetition of instructions given upon the former trial:

The plaintiffs claim that they purchased, that is to say, that John Anderson, whose heirs they are, purchased from Washington R. Snyder, acting for himself and for his sisters, who with him had inherited the property from their father. You have heard the evidence on this subject; the testimony of one of the sisters, that she authorized him to act for her, and that he gave her afterwards her share of the purchase money; the testimony of the husband of another of the sisters, that his wife authorized him to sell, and received her share of the purchase money; the testimony of the mother as to the children having authorized him to sell; and from that testimony you are to determine whether the Snyder heirs, the sisters of Washington R. Snyder, did authorize him to make a contract. There is no pretence that they gave him any written authority, but plaintiffs claim, and you are to determine whether correctly or not, that they gave him authority by word of mouth to act as their agent in selling this property. You can separate that question so as to determine as to each one; whether one·gave, or the other; or whether they all gave it. If any of them gave him that authority, and made him their agent, then whatever he did under that agency would bind whoever authorized him. If they did not all authorize him, if any one or more did not authorize him, then they would not be bound by this action. The question is whether they made him an agent; if he made such a contract at all.

The plaintiffs then claim that Washington R. Snyder, being such an agent, did for himself and his sisters make a contract with John Anderson to sell him the property that is in controversy now, lot 258 in the town (then at least) of Portsmouth.

&ast; &ast; &ast; &ast; &ast; &ast; &ast; &ast;

Charge of Court below.

Then the defendant here produces a deed dated, I think, in 1858, a year after the time when it is claimed that this parol sale was made.    The consideration in that deed is stated to be $150.

\*          \*          \*          \*          \*          \*          \*          \*

It is claimed by the defendant that Hershey got a clear title to the whole of the property by that deed, because, as they claim, there had been no sale made prior to that.    That is for you to determine.    If you find that there was a prior sale, then this deed could not destroy it, if you find on evidence of the nature we have stated, that there had been a prior sale.

But the defendant says further that even if there had been a prior sale made, that afterwards for some reason, being unable to pay the purchase money, or for some other reason, Anderson in some way gave up his rights, or lost his title ; and as evidence of that he has produced the lease you have heard spoken of ; and we are asked to say to you that the fact of that lease, the fact that Anderson rented the property from Hershey, goes to show that he did not any longer own it, and did not any longer claim to own it.    He says that if a man is the owner of prop-erty he would not become the tenant, he would not rent it. That is a question for you to determine under all the evidence. We cannot say to you as a matter of law, that Anderson, from the mere fact of having made that lease, lost his rights, or that the mere fact of his having made a lease proves that he did not have any rights.

\*          \*          \*          \*          \*          \*          \*          \*

It is contended further, on the part of the defendant, that Brinser stands in a better position, if necessary, than Hershey ; that when Brinser went to buy, he was shown this lease ; and that he had a right to assume and conclude from that lease that Anderson had no title, and that, therefore, even if Anderson might have had the title, yet he cannot have any claim, or his heirs cannot, against Brinser ; that if Anderson had a title, he should not have made a lease and put himself on paper, on record as it were, as being only a renter ; and when Brinser saw by the title papers that Anderson was only a renter, he had a right to assume that he was nothing more, and to buy from the person who claimed to have the title.

I do not think that we can say to you as a matter of law that that is so in this case.    When Brinser bought, Anderson was dead.

The lease did not purport to give any one possession but Anderson. When Brinser bought, these plaintiffs who are the heirs of Anderson, were in possession. As heirs they would have no right to the possession because of the lease. Therefore, when Brinser looked at the lease, and also at the fact that these plaintiffs were in possession, he had no legal right to assume before further inquiry that they were in possession because of the lease; and the rule of law is that when a person purchases a title to a property, real estate, from one who is not in possession of the property, when there are other persons in possession, in order to protect himself against any title that those who are in possession may have, he is bound to inquire from them, or to learn in some way, what this title or claim is, else he cannot by purchase cut out any claim they may have. So Brinser did not in this case get any advantage by means of his purchase from Hershey, that Hershey had not; he cannot claim any right here that Hershey could not have claimed, if Hershey were the defendant here instead of Brinser, if Hershey had not sold. You are to determine the case then so far as that part of it is concerned, as though no conveyance had been made to Brinser, and as though the title were still in Hershey.

You are to find then from all the evidence in the case, whether there was a sale originally by Washington R. Snyder to Anderson, a parol sale; and in order to find that, as we have said, you are to be satisfied by clear and distinct and definite evidence what the contract was; the property that the contract was about; how much the purchase money was to be; whether the purchaser went into possession because of the contract, and whether he made valuable improvements because of his having made that purchase and gone into that possession. If you find those facts, they would amount to a valid contract and valid sale, although there was no writing.

If you find there was such a sale, then you are to find whether Washington R. Snyder, who made it, had authority from his sisters to make it for them as well as for himself. If he had authority from them, it would bind them as well as him. If he had no authority from them, then it would not be binding upon those who had not given him the authority to make it; and it would bind those who had given him authority.

If you find those facts, then you are to consider further

Charge of Court below.

whether under that sale Anderson did get possession, and paid the purchase money, more or less; because it would not depend upon the question whether he paid all the purchase money; but whether he paid purchase money on it, went into possession, and made valuable improvements. If you find that he did, then you are to determine further whether afterwards he gave up in any way his rights, whatever they were.

You are to determine the effect of the lease; was the lease made because Anderson had no further claim, or was it made because Hershey had purchased the right to the balance of the purchase money? and was that the way in which they undertook to secure the balance of the purchase money from Hershey to Anderson?

If you find that there was a sale, that Anderson did have a title, and that his title continued after the purchase by Hershey, and after the execution of the lease, then you are to determine further whether Anderson paid to Hershey the full amount that he was entitled to get, whether Anderson paid Hershey all that he was entitled to. If he did, if you should find those facts, your verdict then ought to be generally in favor of the plaintiffs.

If you find that the plaintiffs have a title by that parol sale, and that that title continued, and that all the purchase money that Hershey would under those facts have been entitled to has not been paid, then you would find a verdict for the plaintiffs, subject to the payment at such time as you fix, of whatever balance of the purchase money was due; and then, if the plaintiffs did not pay it within that time, they would lose their title.

I do not know that we could enlighten you any further in the case, gentlemen, except to answer the points that have been presented to us by the defendant in writing. The defendant asks us to say to you,

1. There is not sufficient evidence that Washington R. Snyder had any authority from the heirs of John Snyder to sell to John Anderson, to be submitted to the jury, and the verdict must be for the defendant.

Answer: That instruction is refused. We have already called your attention to the evidence on that subject, and submitted it to you.[1]

2. There is no evidence that any sale made by Washington

Arguments.

R. Snyder was ratified by the heirs of John Snyder but the deed to J. Hoffman Hershey is evidence that it was not, and the verdict must be for the defendant.

Answer: That instruction is refused.[2]

3. There is not sufficient to impeach the lease to submit to the jury as against the evidence of the subscribing witnesses.

Answers: To that we say, the evidence on the subject is legal evidence; and therefore we cannot withhold it from the jury; that is, gentlemen, the evidence given by the plaintiffs, that the lease was not signed by Anderson. You are to consider that evidence together with all the rest. In considering the evidence on that subject, you must also bear in mind the evidence of Hershey and the other witnesses on that subject.[3]

4. The evidence being without dispute that Jonas Brinser, the defendant, was shown, examined and knew the contents of the lease before he purchased, he was not bound to inquire any further.

Answer: That instruction is refused. We have already said to you that, finding these persons in possession, it was his duty to inquire how they came to hold the possession; and, if he did not do so, his purchasing would not take away any rights from them; their rights would remain whatever they were before; he would have no greater right against them than the person from whom he purchased.[4]

5. That under all the evidence in the case, the verdict must be for the defendant.

Answer: That is refused. The case must be passed upon by the jury on the principles which we have already stated.[5]

The verdict of the jury was for the plaintiffs for the premises described in the writ. Judgment having been entered thereon, the defendant took this appeal, specifying that the court erred:

1–5. In refusing to affirm defendant's points.[1 to 5]

6. In submitting to the jury the question whether the lease was given to secure payment of the purchase money.

*Mr. J. C. McAlarney*, for the appellant:

1. The testimony will be read in vain to find the terms of the contract by Anderson with the Snyder heirs, the payment of any purchase money except the $40 mentioned in the receipt

of October 22, 1857, that possession was taken in pursuance of the contract, what the improvements cost, or that they were not capable of being compensated in damages. The court should have charged the jury that there was nothing to take the case out of the statute of frauds, and should have directed a verdict for the defendant : Overmeyer v. Koerner, 81* Pa. 517; Lord's App., 105 Pa. 459; Hart v. Carroll, 85 Pa. 508; Anderson v. Brinser, ante 376; Ballard v. Ward, 89 Pa. 358.

2. The lease in evidence was notice to Brinser of Anderson's title as tenant, and of Hershey's as the landlord under whom Anderson held possession, and he was not bound to inquire further: Leach v. Ansbacher, 55 Pa. 85; Anderson v. Brinser, supra. That Anderson was dead and some of his heirs were in possession when Brinser bought, does not affect this point. Their possession was notice of nothing but the title of John Anderson, whatever it be. The plaintiffs claim by no other title. What John Anderson did binds them, and the question in the case is, did he have a title? If he had none, the plaintiffs have none.

3. If this lease can be found not to be a lease, but an agreement for the payment of purchase money, without evidence, and without showing that Brinser knew it to be other than what it purported to be, then no man can safely buy land not in the actual possession of the vendor, and the law laid down in Wilson v. McCullough, 23 Pa. 440, and Sartwell v. Wilcox, 20 Pa. 123, is a delusion. The paper should have been construed by the court, and the jury should not have been allowed to pass upon its character without evidence : Stauffer v. Latshaw, 2 W. 167; Bradley v. Grosh, 8 Pa. 49; or without proof that Brinser knew when he bought what took place at its execution: Kostenbader v. Peters, 80 Pa. 438. The writing could not be altered by parol: Martin v. Berens, 67 Pa. 463; Eargood's Est., 1 Pears. 399.

*Mr. S. J. M. McCarrell* (with him *Mr. David Fleming*), for the appellees :

1. The testimony fully warranted the jury in finding precedent authority in Washington R. Snyder to make the contract of sale with John Anderson. It results, then, as matter of law, that Hershey, taking the title by the deed of 1858 just as the

Snyder heirs then had it, was bound to convey to Anderson upon payment of the balance of purchase money. That this was fully paid to Hershey by Anderson in his lifetime, is settled by the verdict. Anderson's heirs are therefore the owners of the premises, and entitled to the possession, unless the alleged lease of 1875 stands in the way.

2. The jury would have been waranted by the testimony in finding that John Anderson never executed this lease. Whether they did so, we have no means of ascertaining. But even if executed by Anderson, it was not inconsistent with the theory of the plaintiffs, nor a bar to their recovery. The opinion delivered by this court, when the case was here before, fully warranted the careful instructions given the jury respecting this alleged lease and the effect to be given to it. The fact that Brinser saw it before he bought, can make no difference. The alleged lessee was not then in possession, but had been dead about a year. Brinser knew this, and it was his duty to inquire of the parties in possession whether they were there under the lease.

3. Knowledge of the existence of a lease, does not dispense with inquiry of the tenant before purchasing from the landlord. An extension or modification of an existing lease, or a subsequent purchase by the tenant of the landlord's title, can certainly be enforced against the landlord's vendee, who has not inquired of the tenant in possession respecting the nature and extent of his claim. It is only where the possessors of property have been given an opportunity to speak and have refused, or given false information, that they are estopped from showing the truth: [citing the same authorities cited under par. 4, argument for defendant in error, in Anderson v. Brinser, ante 376, with the addition of Howe v. Ream, 105 Pa. 543.]

OPINION, MR. JUSTICE CLARK:

When this case was here before, we said there was abundant proof of a contract for the sale of the lot in dispute by Washington R. Snyder to John Anderson, in the year 1857. " The receipt, dated October 22, 1857," we then said, " taken with the other evidence in the cause, is full and complete upon this point; the terms of the contract are, we think, sufficiently shown; the lot is described as No. 258, in the borough of Middle-

town, which may be regarded perhaps as a proper designation of the boundaries; the consideration was $300, a considerable part of which, if not all, was shown to have been paid; possession was taken immediately after and in pursuance of the purchase, and a dwelling house was erected upon it; the possession was open and notorious, and was continuously maintained for many years, and until legal proceedings were instituted to test the title." The testimony at this trial on that branch of the case is substantially the same as before, and we adhere to the opinion we expressed on that point at the former hearing. The testimony at the former trial has been supplemented, however, with satisfactory proof that Washington R. Snyder, in this transaction, acted not only for himself, but in the behalf of his sisters, who were the heirs of John Snyder, deceased, and that not only the purchase money paid by Anderson, but the money advanced by Hershey, was divided between the brother and sisters according to their respective interests. There was abundant evidence of the most satisfactory character to this effect, and the fact has been found by the jury.

We are of opinion, also, that there was evidence from which the jury might fairly infer that the deed to Hershey was only a security for the money advanced by him to pay out the purchase money, and that the writing denominated a lease, which, it is alleged, was subsequently executed between Hershey and Anderson, was a contract on the part of the defaulting vendee for the continuance of the possession on terms agreed upon, the rent, as it was paid, being applicable to the principal and interest of the purchase money. In view of what was said in our former opinion, we think it is not necessary to enter into any further discussion on this branch of the case.

The only remaining question for our consideration is whether or not Jonas Brinser is to be regarded as an innocent purchaser, and entitled to protection as such. Anderson died in 1883, and the conveyance by Hershey to Brinser was in 1884. Anderson's heirs were in the actual possession of the premises in dispute at the time of the conveyance, and it is contended that their possession put Brinser upon inquiry as to the title, in virtue of which that possession was maintained, and that, having failed in this respect, he is affected with notice of that which a proper inquiry would have developed. The rule of law which

is thus invoked is settled in a long line of cases, including Jaques v. Weeks, 7 W. 261; Maul v. Rider, 59 Pa. 167; Hottenstein v. Lerch, 104 Pa. 454; Rowe v. Ream, 105 Pa. 543. But it is said that Detweiler, who was the agent of Hershey in the transaction between him and Brinser, exhibited to Brinser the writing, in form of a lease by Hershey to Anderson; that the so-called lease was in itself explanatory of the possession, and Brinser was thereby relieved from further inquiry. Leach v. Ansbacher, 55 Pa. 85, is cited in support of this position. When this case was here before we said: " Anderson was at the time in possession, under the terms of the paper which has been denominated a lease, and if Brinser had actual knowledge of the lease, and had no knowledge of the facts relating to its execution, it is probable under the ruling of this court in Leach v. Ansbacher, 55 Pa. 85, he might be regarded as an innocent purchaser. 'Nothing in the transaction,' says Mr. Justice THOMPSON, in the case cited, ' gave the least sign to put the purchaser upon inquiry. The possession will, it is admitted; but when the party is in possession under a lease, the knowledge of the lease dispenses with the inquiry of how the possession is held. That knowledge the agent had, and of the very terms of the lease. That was enough for him; he was not bound to inquire of the tenant in possession if the lease was fair or fraudulent, or whether there was a trust notwithstanding.'" But as it did not then appear that Brinser had any knowledge whatever of the lease, the rule suggested in Leach v. Ansbacher, as above, was not considered applicable to the case. We intimated, however, somewhat cautiously and doubtfully, that, if that fact had been established, it was probable " the ruling laid down in Leach v. Ansbacher might apply." Upon a careful examination, however, the doubt which then existed in our mind as to the soundness of this view, has grown into a conviction that it cannot be sustained. The case of Leach v. Ansbacher was, without doubt, rightly decided, but the remarks of the learned Justice, who delivered the opinion quoted above, were not necessary to the decision of that case. In Leach v. Ansbacher it was found as a fact that Ansbacher was an innocent purchaser without notice, and that Leach himself, who had actual knowledge of the whole transaction, not only gave no notice of his claim of title, but assented to and approved of the sale. The

same conclusion was irresistible, therefore, on other grounds, and in this sense it may be said that the remarks quoted were not necessary to the decision of the cause.    The authorities cited do not declare the principle in support of which they are cited. Neither in Sugden on Vendors, nor in the case of Hood v. Fahnestock, 1 Pa. 470, do we find any such doctrine declared. Indeed, upon a somewhat careful examination of all the cases, we conclude that the language quoted from Leach v. Ansbacher is sustained neither by reason nor authority.    Knowledge of the existence of a lease will, of course, give constructive notice of all its provisions ; but, the possession, apart from the lease, we think should be treated as notice of the possessor's claim of title, whatever that claim may be, for the lease may be but the first of two or more successive rights acquired by the tenant.    Whilst in the occupancy, under a lease for years, the tenant may have purchased under articles and entitled himself to an equity ; or, indeed, he may have purchased the legal estate in fee and failed to record his deed.    Would it be supposed that a knowledge of the precedent lease would dispense with the duty of inquiry, and entitle a subsequent grantee to the protection of an innocent purchaser ?    Or, the lease may have been the instrument of a base fraud; it may have been executed under the false and fraudulent pretense, to an illiterate person, that it was in fact a conveyance or a contract of sale.    Would possession afford no protection in such a case ?    We think it would.    In such cases the possession is the possessor's only reliance, for he may be powerless to put his claim of title upon the record.

In Sugden on Vendors it is expressly stated, and numerous authorities cited in support of the statement, that if a tenant during his tenancy change his character by having agreed to purchase the estate, his possession amounts to notice of his equitable title as purchaser.    Among the cases cited we find Daniels v. Davison, 16 Ves. 249, where it is held that the possession of a tenant, who had taken it under a lease for a term of years, and during the pendency of the lease made a contract with his lessor for the purchase of the reversion, was notice in itself to a subsequent purchaser (the lease being still unexpired), not only of a tenant's interest under it, but likewise of his equitable title to the estate under his contract for the

purchase.   To the same effect is Allen v. Anthony, 1 Mer. 287 ; and our own cases of Hottenstein v. Lerch, supra, and Rowe v. Ream, supra.

Moreover, it now appears that Anderson, the lessee, was not himself in the possession.   He had died two years or more before the sale to Brinser, and his widow and children were in the possession.   The term of the lease had expired, and it would not, we think, be presumed in favor of a purchaser, in the absence of proof, that the heirs were holding over.

We are of opinion that this case was properly tried, and
The judgment is affirmed.